## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARTHA BRENNAN CAMIRE, *et al.*,

                              Plaintiffs,

          -v.-

ALCOA USA CORP., *et al.*,

                         Defendants.

Civil Action No.: 1:24-cv-01062 (LLA)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iv

INTRODUCTION ............................................................................................ 1

BACKGROUND .............................................................................................. 2

    A.    ERISA ................................................................................................ 2

    B.    Alcoa's Plans and the Pension Risk Transfers ...................................... 4

    C.    Athene ............................................................................................... 8

    D.    Plaintiffs' Allegations ........................................................................ 9

LEGAL STANDARD ...................................................................................... 10

ARGUMENT .................................................................................................. 10

I.    Plaintiffs Have Not Established an Injury in Fact to Confer Standing. ........... 11

    A.    Win or Lose, Plaintiffs' Benefits Will Not Change. ............................ 12

    B.    The Specter of Possible Insurer Failure Is Too Abstract to Establish Injury in Fact to Plaintiffs. .................................................................. 16

        1.    Plaintiffs Do Not Allege that Insurer Failure Is Imminent or Likely. ......................................................................... 16

        2.    Plaintiffs Do Not Plausibly Allege that Plaintiffs Face a Substantially Increased Risk, and Substantial Probability, of Harm to Their Benefits. ............................................ 18

    C.    Plaintiffs Have Not Alleged Harm to the Plan. ................................... 24

II.    Plaintiffs Fail To State A Claim Under ERISA. ........................................... 24

    A.    Defendants Did Not Breach Any Fiduciary Duties (Counts I and II). ......... 24

        1.    A Decision to Pursue a PRT Is Not a Fiduciary One. ............................. 25

        2.    Defendants Did Not Breach the Duty Of Loyalty. ....................... 26

        3.    Defendants Did Not Breach the Duty Of Prudence. ...................... 30

    B.    Plaintiffs' Prohibited Transactions Claim Fails (Count III). ............... 36

    C.    Plaintiffs' Failure To Monitor Claim Fails (Count IV). ...................... 39

III.    ERISA Limits the Scope of Plaintiffs' Relief. .................................................. 41

CONCLUSION ............................................................................................................ 41

CERTIFICATE OF SERVICE ..................................................................................... 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Excursions, LLC v. Yellen*,
  66 F.4th 272 (D.C. Cir. 2023) ...................................................................10

*Alkanani v. Aegis Def. Servs., LLC*,
  976 F. Supp. 2d 1 (D.D.C. 2013) .............................................................23

*Amgen, Inc. v. Harris*,
  577 U.S. 308 (2016) (per curiam) .............................................................34

*Arab v. Blinken*,
  600 F. Supp. 3d 59 (D.D.C. 2022) ..............................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................10

*Beck v. PACE Int'l Union*,
  551 U.S. 96 (2007) ...............................................................................4, 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................10

*Bloom v. AllianceBernstein L.P.*,
  2024 WL 1255708 (S.D.N.Y. Mar. 25, 2024) ..........................................26

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) .....................................................................30

*Browning v. Am. Honda Motor Co.*,
  549 F. Supp. 3d 996 (N.D. Cal. 2021) ........................................................8

*Burke v. Boeing Co.*,
  42 F.4th 716 (7th Cir. 2022) ......................................................................27

*Bussian v. RJR Nabisco, Inc.*,
  223 F.3d 286 (5th Cir. 2000) .................................................................33, 34

*Carter v. San Pasqual Fiduciary Tr. Co.*,
  2016 WL 6803768 (C.D. Cal. Apr. 18, 2016) ..........................................40

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .............................................................................11, 23

*Coyne & Delany Co. v. Selman*,
  98 F.3d 1457 (4th Cir. 1996) ....................................................................39

*Cunningham v. Cornell Univ.*,
  86 F.4th 961 (2d Cir. 2023) ................................................................35, 38

*Cutler v. U.S. Dep't of Health & Hum. Servs.*,
  797 F.3d 1173 (D.C. Cir. 2015)...............................................................10

*David v. Alphin*,
  704 F.3d 327 (4th Cir. 2013) ....................................................................22

*Deluca v. Blue Cross Blue Shield of Mich.*,
  628 F.3d 743 (6th Cir. 2010) ....................................................................37

*Donovan v. Bierwirth*,
  680 F.2d 263 (2d Cir. 1982).....................................................................27

*Downs v. JSP Cos.*,
  297 F. Supp. 3d 163 (D.D.C. 2018) ..........................................................28

*Duke v. Luxottica U.S. Holdings Corp.*,
  2023 WL 6385389 (E.D.N.Y. 2023).........................................................24

*Dupree v. Prudential Ins. Co. of Am.*,
  2007 WL 2263892 (S.D. Fla. 2007) ..........................................................41

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
  878 F.3d 371 (D.C. Cir. 2017) ..................................................................18

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
  2019 WL 4466714 (S.D.N.Y. 2019)..........................................................30

*Finnbin, LLC v. CPSC*,
  45 F.4th 127 (D.C. Cir. 2022)...................................................................10

*Fla. Audubon Soc'y v. Bentsen*,
  94 F.3d 658 (D.C. 1996) (en banc) ...........................................................21

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015)..............................................................18, 23

*Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*,
  2020 WL 5994957 (E.D.N.Y. 2020), *aff'd*, 858 F. App'x 432 (2d Cir. 2021).......................14

*Gonzalez v. Northwell*,
  632 F. Supp. 3d 148 (E.D.N.Y. 2022) .......................................................35

*Goodsell v. Tchrs. Health Trust*,
  2024 WL 2750467 (D. Nev. May 29, 2024) ........................................................22

*Hartford Fire Ins. Co. v. California*,
  509 U.S. 764 (1993) ..............................................................................................7

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ............................................................................................15

*Independent Ass'n of Publishers' Emps., Inc. v. Dow Jones & Co., Inc.*,
  671 F. Supp. 1365 (S.D.N.Y. 1987) ..............................................................28, 31

*Kohari v. MetLife Grp., Inc.*,
  2022 WL 3029328 (S.D.N.Y. 2022) ...................................................................26

*LaLonde v. Mass. Mut. Ins. Co.*,
  2024 WL 1346027 (D. Mass. Mar. 29, 2024) .....................................................34

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008) ......................................................................................20, 24

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
  2015 WL 6437475 (S.D.N.Y. 2015) ...................................................................28

*Lee v. Verizon Commc'ns, Inc.*,
  837 F.3d 523 (5th Cir. 2016) ...........................................16, 17, 19, 22, 25, 26, 33

*Leigh v. Engle*,
  727 F.2d 113 (7th Cir. 1984) ..............................................................................27

*Lewis v. Pension Benefit Guar. Corp.*,
  912 F.3d 605 (D.C. Cir. 2018) ............................................................................41

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ....................................................................................3, 4, 37

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................11

*Marshall v. Carroll*,
  1980 U.S. Dist. LEXIS 17767 (N.D. Cal. Apr. 18, 1980) ...................................37

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ............................................................................................24

*Matney v. Barrick Gold of N. Am.*,
  80 F.4th 1136 (10th Cir. 2023) .....................................................................34, 39

*Matousek v. MidAmerican Energy Co.*,
  51 F.4th 274 (8th Cir. 2022) ....................................................34

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ....................................................34

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
  414 U.S. 453 (1974)....................................................................41

*Nat'l Treasury Emps. Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996)................................................11

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
  513 U.S. 251 (1995)....................................................................36

*Neil v. Zell*,
  677 F. Supp. 2d 1010 (N.D. Ill. 2009) ....................................40

*Nicolas v. The Trustees of Princeton Univ.*,
  2017 WL 4455897 (D.N.J. 2017) .............................................40

*Oliver v. Black Knight Asset Mgmt., LLC*,
  812 F. Supp. 2d 2 (D.D.C. 2011)..............................................29

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)................................................................3, 25

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*,
  656 F. Supp. 3d 137 (D.D.C. 2023) ....................................17, 18

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
  489 F.3d 1279 (D.C. Cir. 2007) ................................................17

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011)......................................................35

*Riley v. Murdock*,
  83 F.3d 415, 1996 WL 209613 (4th Cir. 1996) ....................21, 33

*Rinehart v. Lehman Bros. Holdings, Inc.*,
  817 F.3d 56 (2d Cir. 2016)........................................................39

*Scalia v. WPN Corp.*,
  417 F. Supp. 3d 658 (W.D. Pa. 2019) ......................................39

*Sellers v. Anthem Life Ins. Co.*,
  316 F. Supp. 3d 25 (D.D.C. 2018) ......................................36, 37

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................10, 11

*Pension Benefit Guar. Corp. ex rel. St. Vincent's Catholic Med. Ctrs. Ret. Plan v.
   Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ...................................................................24, 30, 32

*Tatum v. RJR Pension Inv. Comm.*,
   761 F.3d 346 (4th Cir. 2014) ............................................................................30

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020) ...................................................2, 4, 12, 13, 14, 15, 19, 24

*Trump v. New York*,
   592 U.S. 125 (2020) ........................................................................................11

*United Transp. Union v. ICC*,
   891 F.2d 908 (D.C. Cir. 1989) .........................................................................17

*Valdius Reinsurance Ltd. v. United States*,
   19 F. Supp. 3d 225 (D.D.C. 2014) .....................................................................7

*Viasat, Inc. v. FCC*,
   47 F.4th 769 (D.C. Cir. 2022) .....................................................................11, 16

*Wash. Exec. Servs., Inc. v. Hartford Cas. Ins. Co.*,
   567 F. Supp. 3d 1 (D.D.C. 2021) .......................................................................5

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ........................................................................................16

*Williams v. Lew*,
   819 F.3d 466 (D.C. Cir. 2016) .........................................................................22

**Statutes**

29 U.S.C. § 1001 ...................................................................................................2

29 U.S.C. § 1002 ............................................................................................3, 36

29 U.S.C. § 1055 .................................................................................................15

29 U.S.C. § 1104 ...............................................................................3, 25, 26, 40

29 U.S.C. § 1105 ..........................................................................................35, 36

29 U.S.C. § 1106 ......................................................................................36, 37, 38

29 U.S.C. § 1108 ..........................................................................................38, 39

29 U.S.C. § 1109 ................................................................................................24, 35

29 U.S.C. § 1132(a) .................................................................................11, 24, 41, 42

Iowa Code § 507C.2.14.b .........................................................................................7, 21

Iowa Code § 508A.1 ..................................................................................................7, 21

N.Y. Ins. Law § 7435(b) ...........................................................................................7, 21

**Regulations**

29 C.F.R. § 2509.75–8(D-4) ..........................................................................................27

29 C.F.R. § 2509.95-1(c) .............................................................................................32, 33

29 C.F.R. § 2510.3-3(d)(2)(ii) .......................................................................................36

29 C.F.R. § 4041.27(b)(3)(ii) ........................................................................................20

**Other Authorities**

71 Fed. Reg. 5887 (Feb. 3, 2006) ..................................................................................38

Andrey D. Pavlov & Susan M. Wachter, *Systemic Risk and Market Institutions*,
    26 Yale J. on Reg. 445 (2009) ..................................................................................19

DOL Opinion Letter No. 76-36, 1976 WL 5051 (Jan. 15, 1976) ..................................36

Office of the Comptroller of the Currency, *Risk Measurement*,
    2020 WL 1692720 (2020)..........................................................................................19

## INTRODUCTION

Plaintiffs are four retirees who are receiving pension benefits earned under retirement plans sponsored by Alcoa USA Corp. ("Alcoa"). Through a series of common transactions known as pension risk transfers ("PRTs"), the obligation to pay each Plaintiff's pension benefits was transferred from an Alcoa pension plan to one of two insurance companies (collectively referred to as "Athene"). After each transaction, Plaintiffs have continued to receive their fixed benefit payments from Athene, without fail, and they never allege that nonpayment is imminent. Nonetheless, they seek to assert class action claims under the Employee Retirement Income Security Act ("ERISA") because they disagree with the selection of Athene. Plaintiffs' disagreement, however, does not give rise to cognizable claims.

While Plaintiffs do not dispute that PRTs are lawful under ERISA, they assert that these transactions violated ERISA because of the alleged risk associated with investments and reinsurance used by Athene. Plaintiffs allege that "sooner or later" Athene could fail. Compl. ¶ 64. But notably absent from the Complaint are any allegations that Plaintiffs have yet to lose even one single penny as a result of the PRTs with Athene. To the contrary, Plaintiffs allege that they have been receiving benefits from Athene for as many as six years without any suggestion of a missed payment. Compl. ¶¶ 13–16. Plaintiffs likewise fail to allege a non-speculative, imminent or likely risk of any impairment to their benefits. Nor could they plausibly do so, given the substantial protections in place to secure their benefits.

Under these circumstances, Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction and for failure to state a claim.

*First*, Plaintiffs lack an injury-in-fact to confer Article III standing. The Supreme Court recently decided a case similar to this one involving participants in a defined benefit pension plan, and it held that the plaintiffs lacked standing "for a simple, commonsense reason: They have

received all of their vested pensions benefits so far, and they are legally entitled to receive the same monthly payments for the rest of their lives." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Here, Plaintiffs do not allege that they have not received all of their benefits or that their legal rights to their benefits have been diminished. Instead, they seek damages based on some inchoate future risk of lost benefits. Their purported injuries are entirely speculative, and their claims fail the long-standing requirement under Article III of an imminent injury.

*Second*, even if Plaintiffs had met Article III's standing requirements, Plaintiffs fail to state a claim under ERISA. The decision to engage in the PRTs is not subject to ERISA's fiduciary standards, and the selection of Athene to serve as the recipient of pension obligations did not violate them. The Alcoa Defendants acted as fiduciaries only to the extent that the Alcoa Corp. Benefits Management Committee (the "Committee") selected and monitored Fiduciary Counselors Inc. ("Fiduciary Counselors") as the fiduciary charged with selecting an insurance company; yet there are no allegations that the selection of Fiduciary Counselors violated ERISA's duties of loyalty or prudence (and only a conclusory allegation regarding monitoring). Likewise, while Fiduciary Counselors selected Athene, there is no allegation that this selection benefitted Fiduciary Counselors or otherwise violated its duty of loyalty. Plaintiffs allege that the selection of Athene violated the duty of prudence, but the focus of that inquiry is on the process employed by the fiduciary, and Plaintiffs fail to plausibly allege anything improper about the process used by Fiduciary Counselors.

For these and the additional reasons below, the Complaint should be dismissed.

## BACKGROUND

### A.    ERISA

This case is brought under ERISA, which was enacted by Congress in 1974 to establish minimum standards for voluntarily established benefit plans provided by private employers. 29

U.S.C. § 1001. ERISA applies to various company-sponsored retirement programs, including defined benefit (i.e., pension) plans. *See id* § 1002. While ERISA does not "require[] employers to establish employee benefits plans," or "mandate what kind of benefits employers must provide if they choose to have such a plan," if employers do offer qualifying benefits plans, ERISA's provisions apply. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).

As relevant here, ERISA imposes on plan fiduciaries the duties of loyalty and prudence. Fiduciaries must "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries," and must do so "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan"—known as the duty of loyalty. 29 U.S.C. § 1104(a)(1)(A). Fiduciaries must also act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use"—known as the duty of prudence. 29 U.S.C. § 1104(a)(1)(B); *see* Compl. ¶ 24.

Crucially, ERISA imposes these fiduciary duties on persons only "to the extent" they exercise "discretionary authority or discretionary control" in managing or administering a qualifying plan. 29 U.S.C. § 1002(21)(A); *see also Pegram v. Herdrich*, 530 U.S. 211, 222 (2000) ("A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.'"). Under ERISA, employers often serve as "plan sponsors" that establish or maintain benefits plans, but this status is distinct from fiduciary status under ERISA and does not subject an employer to fiduciary liability. *See Pegram*, 530 U.S. at 225 ("In every case charging breach of ERISA fiduciary duty [] the threshold question is … whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."). "Only when fulfilling certain defined functions … does a person

become a fiduciary." *Spink*, 517 U.S. at 890. And determining whether an employer is wearing its fiduciary "hat" "depends upon the nature of the function performed." *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007).

### B.    Alcoa's Plans and the Pension Risk Transfers

Alcoa Corporation is a publicly traded aluminum producer that employs over 13,000 employees worldwide. Compl. ¶ 17. Its subsidiary, Alcoa USA Corp., sponsors defined benefit plans under ERISA from which certain employees—including Plaintiffs Martha Brennan Camire, Craig Jefferson, David Lyn Shepherd, and Daniel Schipper—received pension benefits (the "Plans"). Compl. ¶¶ 9, 18. Under the terms of the Plans, the Committee had fiduciary responsibility to oversee the Plans. Compl. ¶ 19. Plaintiffs bring suit against Defendants Alcoa Corp., Alcoa USA Corp., and the Committee, as well as William F. Oplinger, who, "[a]s of 2016" was a member of the Committee and now serves as Alcoa's President and Chief Executive Officer, Compl. ¶ 20 (collectively, the "Alcoa Defendants"). Though Plaintiffs include Mr. Oplinger among the Alcoa Defendants, the Complaint contains no allegations that he was involved in any fiduciary acts associated with the PRTs that are the subject of this case—which all occurred between 2018 and 2022, Compl. ¶ 3—including the disputed decision to select Athene to pay Plaintiffs' benefits.

Plaintiffs were all enrolled in Alcoa's defined benefit pension plans. Compl. ¶ 9. "In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole*, 590 U.S. at 540. By contrast, in a defined contribution plan, such as a 401(k) plan, "the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Id.*

4

This case stems from four PRT transactions occurring between 2018 and 2022 involving the Plans and two insurance companies, Athene Annuity and Life Co. ("Athene Iowa") and Athene Annuity & Life Assurance Company of New York ("Athene New York"). Compl. ¶ 3. The underlying group annuity contracts supporting those transactions are attached as Exhibits A–G (the "Contracts").[1] The Committee appointed Defendant Fiduciary Counselors, a privately held, registered investment adviser, "to act as the independent fiduciary over the [PRTs]." Compl. ¶ 21. Fiduciary Counselors is experienced "as an independent fiduciary for pension fund assets." *Id.* When Fiduciary Counselors was retained for the relevant PRTs it "assum[ed] full fiduciary responsibility" with respect to the transactions. *Id* ¶ 80. In other words, upon hiring Fiduciary Counselors as independent fiduciary, the Committee had no fiduciary responsibility for the selection of the annuity provider for the PRTs.

A PRT allows a plan sponsor to terminate a pension plan and transfer all of its liabilities to an insurer or to "'lift out' a certain participant population" by "purchas[ing] an annuity from an insurance company to satisfy benefit payments to the participants affected." ERISA Advisory Council, Consultation Paper on Interpretive Bulletin 95-1 at 1 (July 2023), cited at Compl. ¶ 30 n.15 (Ex. H); Compl. ¶ 30. "PRT annuity purchase transactions have occurred throughout ERISA's history," and they operate to "transfer liability for payments from the plan to the insurance company issuing the annuity." Ex. H at 2. Under Department of Labor ("DOL") regulations, "so long as certain minimum standards are satisfied with respect to the annuity and

---

[1] When deciding a motion to dismiss, courts may consider "documents attached as exhibits or incorporated by reference in the complaint, as well as documents upon which the plaintiff's complaint necessarily relies," such as the contracts underlying a dispute, even if those documents are not attached to the complaint. *Wash. Exec. Servs., Inc. v. Hartford Cas. Ins. Co.*, 567 F. Supp. 3d 1, 4 (D.D.C. 2021) (cleaned up).

annuity provider, the affected individuals are no longer participants covered under the plan" after a PRT is completed. *Id.*

Retirees whose benefits are transferred as part of a PRT receive the same benefits as they had beforehand; only the benefit provider changes. *See* Advisory Council on Employee Welfare and Pension Benefit Plans, *Model Notices and Disclosures for Pension Risk Transfers*, at 40 (Nov. 2015) (Ex. I).[2]  In some cases, insurers establish separate accounts to fund the liabilities under group annuity contracts purchased by pension plans. Ex. H at 29.  The assets transferred from the pension plan to the insurer to purchase the group annuity contract are placed into the separate account.  *See id.*  The separate account is shielded from the liabilities of the insurer's general account, providing additional protections for the transferred assets (and the pension obligations they support) should the insurance provider become insolvent.  *See id.*

Under the PRTs involving the Plans, Athene New York and Athene Iowa each issued group annuity contracts irrevocably guaranteeing that the insurer would pay the benefits of each retiree covered under the applicable insurer's contracts.  *See, e.g.*, Ex B § 2.1; Ex C § 2.1.  All of the contracts provide for separate accounts, and the assets in the separate accounts are insulated from the liabilities of the insurance company.  The contracts provide:

> On the Effective Date, Athene will allocate 100% of the Contribution Amount received on such date to the Separate Account. All assets allocated by Athene to the Separate Account will be held by Athene in one or more custody accounts at entities independent of Athene and each such custody account shall only hold assets allocated to the Separate Account.

---

[2]    https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/about-us/erisa-advisory-council/2015-model-notices-and-disclosures-for-pension-risk-transfers.pdf.  The Court may take judicial notice of information posted on official government websites. *See Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

*See, e.g.*, Ex. B § 1.2(a); Ex. C § 1.2(a).  In the event of insurer insolvency, the separate account assets are not available to all creditors of the insurer but, instead, may only be used to pay the group annuity contracts supported by the accounts.  *See* Ex. B § 1.5; Ex. C § 1.5; *see also* N.Y. Ins. Law § 7435(b); Iowa Code §§ 507C.2.14.b, 508A.1.  Furthermore, the initial premium for the contract is allocated to the separate account, meaning that the pension obligations are fully supported by the separate account from day one.

Many insurance providers—including Athene—also have reinsurance coverage. Reinsurance "is insurance for insurance companies, and it covers an insurer in the event it is required to pay out funds under one or more of the direct insurance policies that it has used." *Valdius Reinsurance Ltd. v. United States*, 19 F. Supp. 3d 225, 227 (D.D.C. 2014); *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772 (1993) ("primary insurers themselves usually purchase insurance to cover a portion of the risk they assume").  Reinsurance helps to further mitigate risk against losses.  Statement of the 2023 Advisory Council on Employee Welfare and Pension Benefit Plans to the U.S. Department of Labor Regarding Interpretive Bulletin 95-1 at 2 (Aug. 29, 2023), cited at Compl. ¶ 44 n.40 (Ex. J).

Pension benefits guaranteed by an insurance company are also protected by state guarantee associations (SGAs).  *Id.* ¶ 34.  SGAs are instruments of state law, and they are funded by assessments of member insurers when another insurer declares insolvency.  *Id.* ¶ 36.  These SGA systems "are rarely triggered, so that over the past 30+ years, no one has lost a penny under a PRT annuity."  Ex. J at 4.

C.    **Athene**

The two annuity providers relevant to this dispute are Athene Iowa, and its subsidiary, Athene New York.[3]  Compl. ¶ 49.  Athene Iowa is a subsidiary of Athene Holding, Ltd.  *Id.*  Athene "is one of the leading players in the PRT market, having completed at least 45 transactions totaling $50.5 billion and covering over 550,000 plan participants."  *Id.* ¶ 50.  And annuities now constitute its "primary product line."  Athene Holding Ltd. Annual Report (Form 10-K) at 13 (Mar. 1, 2023), cited at Compl. ¶ 59 n.73 (Ex. K).  Athene maintains a "high quality, well diversified investment portfolio," and is "rated 'A+' by S&P and Fitch, 'A' by A.M. Best and 'A1' by Moody's.  Athene, *Pension Group Annuities*, https://www.nisa.com/market-updates/pension-risk-transfer-prt/, cited at Compl. ¶ 50 n.51 (Ex. L).[4]

Plaintiffs further allege that Athene has two reinsurance subsidiaries headquartered in Bermuda—Athene Life Re Ltd. and Athene Annuity Re Ltd.  Compl. ¶ 51.  According to the sources cited in the Complaint, Bermuda "was approved by the [National Association of Insurance Commissioners] as a 'Qualified Jurisdiction' for reinsurance collateral reduction" in 2015.  *See* Nathan Foley-Fisher, et al., *Capturing the Illiquidity Premium* at 5 (Feb. 2020) (Ex. M), cited at Compl. ¶ 63 n.81.  Plaintiffs allege that Bermuda's applicable laws employ lower capital requirements and fewer investment limitations than those of the United States.  *See id.* ¶¶ 51–52, 62.  But Plaintiffs do not allege any facts about Athene Life Re's or Athene Annuity Re's current capital holdings or investment portfolio.  Instead, Plaintiffs merely allege that Athene Annuity Re

---

[3] Athene New York provides annuity benefits to participants who reside in New York.  Compl. ¶ 76 n.106.

[4] Courts "routinely consider the full page of a website where, as here, a portion of the page is quoted or relied on in the complaint."  *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1004 (N.D. Cal. 2021) (cleaned up).

"ended up with $87 billion on its books in 2020," Compl. ¶ 62, without any allegations that Athene has ever faced a funding shortfall or that Athene is at imminent risk of failure.

### D.    Plaintiffs' Allegations

Alcoa decided to transfer some of its pension obligations to one or more insurance companies through a series of PRTs.  Compl. ¶ 79.  After Alcoa made that decision, the Committee appointed Fiduciary Counselors as an independent fiduciary over the PRTs, through which Fiduciary Counselors "assume[d] full fiduciary responsibility."  Compl. ¶ 80.  In other words, after the Committee retained Fiduciary Counselors, neither the Committee nor the other Alcoa Defendants were the decision-makers for the selection of the annuity provider for the PRTs.  Plaintiffs do not allege any facts about the process the Committee used to select Fiduciary Counselors.

Fiduciary Counselors selected Athene Iowa and Athene New York to be the annuity providers and, in a series of four separate transactions, the Plans purchased group annuity contracts from these insurers, which transferred nearly 30,000 participants into Athene annuities.  Compl. ¶¶ 79, 81–85.  Aside from a stray conclusory suggestion that Fiduciary Counselors did not conduct an impartial investigation of annuity providers, Compl. ¶ 88, Plaintiffs do not offer any factual allegations about the process Fiduciary Counselors used to select Athene.

Plaintiffs are four retirees who formerly worked at Alcoa and were participants in one or more of the Plans before their benefit obligations were transferred to either Athene New York or Athene Iowa as part of the PRTs.  Compl. ¶¶ 13–16.  Plaintiffs are each receiving pension payments from the applicable Athene insurance company.  *Id.*  There are no allegations that any of the Plaintiffs has received less than the full amount to which they are entitled.  Plaintiff Camire, for instance, alleges that she has been receiving pension payments from Athene for six years without incident.  *Id.* ¶ 14.

**LEGAL STANDARD**

To survive a Rule 12(b)(1) motion, a plaintiff "bears the burden of establishing" that Article III jurisdiction exists. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). If a plaintiff "lacks standing to bring his claims in federal court, then [the court] [is] powerless to decide the case and must dismiss it." *Cutler v. U.S. Dep't of Health & Hum. Servs.*, 797 F.3d 1173, 1179 (D.C. Cir. 2015). To establish standing, a plaintiff must show "more than a sheer possibility" that he has standing to sue. *Air Excursions, LLC v. Yellen*, 66 F.4th 272, 278 (D.C. Cir. 2023). "Thus, if a complaint pleads facts that are merely consistent with the plaintiff's theory of standing, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up). "[G]eneral averments, conclusory allegations, and speculative some day intentions are inadequate to demonstrate injury in fact." *Finnbin, LLC v. CPSC*, 45 F.4th 127, 137 (D.C. Cir. 2022).

To survive a Rule 12(b)(6) motion, a complaint must also "state[] a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Mere "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Id.* at 678. Instead, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545 (citation omitted).

**ARGUMENT**

Plaintiffs' claims suffer from several fatal defects. Plaintiffs have not met their burden to invoke this Court's subject-matter jurisdiction because they have not alleged any injury-in-fact and any harm they may suffer is speculative. They have also failed to state a claim under ERISA

because they have not plausibly alleged that Defendants breached any of their fiduciary duties. Their claims should therefore be dismissed.

## I.    Plaintiffs Have Not Established an Injury in Fact to Confer Standing.

The "irreducible constitutional minimum of standing" requires that plaintiffs establish an injury in fact. *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). That means plaintiffs must show they have "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Id.* To be "concrete," an injury must be "real and not abstract"—that is, "it must actually exist." *Id.* at 340. And the injury must exist at the time of the plaintiffs' suit because "a 'speculative' possibility of future injury does not suffice" to satisfy Article III's injury-in-fact requirement. *Viasat, Inc. v. FCC*, 47 F.4th 769, 778 (D.C. Cir. 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). Similarly, under the ripeness doctrine, a case is not cognizable where it is "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *See Trump v. New York*, 592 U.S. 125, 132 (2020); *see Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) ("Ripeness … shares the constitutional requirement of standing that an injury in fact be certainly impending.").

Plaintiffs fail to establish standing for two primary reasons. *First*, under controlling Supreme Court precedent, standing does not exist where, as here, Plaintiffs will receive the same pension benefits whether they win or lose this case. As a result, Plaintiffs cannot maintain that they face any current harm from the PRTs with Athene. *Second*, Plaintiffs' allegations that "sooner or later" the insurer might fail is far too speculative to establish injury in fact. Additionally, Plaintiffs' claims under 29 U.S.C. § 1132(a)(2) lack standing for the independent reason that Plaintiffs fail to allege any harm to the Plan.

### A.    Win or Lose, Plaintiffs' Benefits Will Not Change.

The Supreme Court's recent decision in an ERISA class-action case holding that participants in a defined benefit retirement plan lacked standing to challenge the alleged mismanagement of the plan controls the analysis in this case. *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020). In *Thole*, participants in a defined benefit plan alleged that defendants breached their fiduciary duties of loyalty and prudence by poorly investing the plan's assets. *Id.* at 541. Despite allegations that the plan suffered losses of approximately $750 million due to the investment decisions, the Supreme Court affirmed dismissal for lack of standing because the participants "ha[d] been paid all of their monthly pension benefits," and therefore they "ha[d] not sustained any monetary injury." *Id.* at 540.

The Court noted that, because the plaintiffs were participants in a defined benefit plan, they "receive a fixed payment each month [that] do[es] not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." The Court contrasted a defined benefit plan with a "defined-contribution plan, such as a 401(k) plan," where a participant's benefits "can turn on the plan fiduciaries' particular investment decisions." *Id.* That distinction, the Court held, was "of decisive importance to th[e] case." *Id.* It demonstrated that plaintiffs "ha[d] no concrete stake in the lawsuit." *Id.* at 542.

Since the plaintiffs were participants in a defined benefit plan, their "benefits are fixed and will not change, regardless of how well or poorly the plan is managed." *Id.* at 543. As a result, they could not bring suit to challenge the alleged mismanagement of the plan or argue that the mismanagement decreased the plan's overall value. *See id.* As the Court observed, the plaintiffs' benefits were "not tied to the value of the plan." *Id.* If the plaintiffs "were to *lose* th[e] lawsuit, they would still receive the exact same monthly benefits they are already slated to receive, not a penny less," and if they "were to *win* th[e] lawsuit, they would still receive the exact same monthly

benefits they are already slated to receive, not a penny more." *Id.* at 541 (emphasis in original). So they "lack[ed] Article III standing for a simple, commonsense reason: They have received all of their vested pensions benefits so far, and they are legally entitled to receive the same monthly payments for the rest of their lives." *Id.* at 547. "There is no ERISA exception to Article III." *Id.*

This case is on all fours with *Thole*. Just like in *Thole*, Plaintiffs all are receiving benefits that were determined under a defined benefit pension plan. Compl. ¶ 9. That means, like in *Thole*, Plaintiffs will receive the same fixed amounts each month regardless of the strength of the fund available to pay the benefits. Even though Plaintiffs now receive payments from Athene, rather than from an Alcoa pension plan, they still are entitled to (and have received) the same benefits as if they were participants in Alcoa's plan. Plaintiffs' benefits also will not fluctuate based on Athene's investment strategies or the value of Athene's assets.

Plaintiffs' allegations confirm that the transactions between Alcoa and Athene have not affected their benefits. Plaintiffs Jefferson, Shepherd, and Schipper all retired at some point in the 2010s and began receiving benefits payments from Athene in 2022. Compl. ¶¶ 13, 15–16. And Plaintiff Camire began receiving pension payments from Alcoa in 2012, and then started to receive payments from Athene in 2018. Compl. ¶ 14. Plaintiffs do not allege that they are missing any payments or that they have received even one penny less than what they were entitled to under the Alcoa pension plans. In other words, Plaintiffs do not allege that they are currently suffering any monetary harm.

Instead, Plaintiffs' theory of liability is largely built on their allegations that Athene "invests in far riskier assets" than "traditional annuity providers" and has offshore reinsurance. Compl. ¶¶ 90–92. As a result, Plaintiffs assert, Defendants should have either selected a different annuity provider or compensated Plaintiffs for the additional risks associated with Athene. *See id.*

Under *Thole*, these allegations are insufficient to confer standing. Even if Defendants had proceeded with Plaintiffs' preferred course and chosen a different annuity provider, the only difference in Plaintiffs' benefits would be a different company sending the benefits payments. In other words, Plaintiffs would be receiving the same benefits they currently receive from a so-called "traditional annuity provider" rather than from Athene. Because Plaintiffs were participants in a defined benefit plan, they are entitled to the same fixed payments no matter where the payments come from or which assets are used to make them. *See Thole*, 590 U.S. at 544–45. This case therefore squarely falls within *Thole*'s holding that Plaintiffs do not have standing to bring ERISA claims when "[w]inning or losing this suit would not change the plaintiffs' monthly pension benefits." *Thole*, 590 U.S. at 547.

Following *Thole*, other courts have dismissed similar lawsuits involving ERISA-covered benefits for lack of standing. For example, in one case involving an ERISA health benefit plan, plaintiffs sued their employer for engaging in a "captive insurance scheme" with an insurer such that the employer paid premiums to the insurer, which then used those premiums partially to pay the beneficiaries' claims and partially to make investments to boost the employer's profits. *Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 2020 WL 5994957, at *1 (E.D.N.Y. 2020), *aff'd*, 858 F. App'x 432 (2d Cir. 2021). The court held that the plaintiffs lacked standing under *Thole* because "even if the plaintiffs were successful in their ERISA claims, their benefits would not change." *Id.* at *3. Plaintiffs' suit could not proceed because "they ha[d] no right under ERISA to receive additional benefits," and "[a]n alleged violation of ERISA's duties of loyalty and prudence does not alone confer standing." *Id.*

The same is true here. Even if Plaintiffs' claims succeeded, they would receive the same monthly benefit payments that they have been receiving since the PRTs with Athene. *Thole*

dictates that, in these circumstances, participants receiving benefits earned under a defined benefit plan do not have a concrete injury simply because they believe an ERISA fiduciary violated its fiduciary duties.  590 U.S. at 542–43 (explaining plaintiffs' theory of standing was "flaw[ed]" because "participants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust or to the participants in a defined-contribution plan").

Plaintiffs also appear to suggest that they currently have been harmed from the PRTs because "the value of the benefits [they] are receiving is less than the value of the benefit they were receiving from Alcoa."  Compl. ¶ 86.  This theory also fails.  Pensions are not like commodities or other property that may be traded, and therefore valued, based on risk.  Under ERISA, a pension may not be assigned or alienated.  29 U.S.C § 1056(d).  Indeed, when a pension is valued—for example, if paid in a lump sum to a retiree—a present value of the stream of annuity payments is calculated based on interest rates and mortality assumptions, without taking into account the risk of nonpayment.  *See* 29 U.S.C. § 1055(g).  Moreover, pension plan participants do not have any interest whatsoever in the pool of assets used to pay their benefits.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999) (explaining that defined benefit "plan members generally have a nonforfeitable right only to their 'accrued benefit,'" and do not have "a claim to any particular asset that composes a part of the plan's general asset pool").  At bottom, as *Thole* made clear, the value of Plaintiffs' retirement benefits is simply the amount of the monthly annuity payments to which they are entitled.  *See Thole*, 590 U.S. at 543 ("The plan participants' benefits are fixed and will not change, regardless of how well or poorly the plan is managed.").  Accordingly, any assertion that Plaintiffs currently have been harmed because their benefits have somehow been "devalued" as a result of Athene's alleged risk profile fails as a matter of law.

**B.    The Specter of Possible Insurer Failure Is Too Abstract to Establish Injury in Fact to Plaintiffs.**

Plaintiffs also cannot establish standing based on allegations that they might be harmed in the future due to a possible failure of the insurer because those allegations are entirely speculative. Plaintiffs allege that there was "clear evidence" that Athene is "substantially riskier than traditional annuity providers," and Defendants' transactions with Athene therefore placed Plaintiffs' future benefits "at substantial risk of default." Compl. ¶ 90. But Plaintiffs do not allege (1) that the risk of insurer failure is imminent or concrete, (2) a sufficient connection between a potential failure by the insurer and any reduction in benefit payments to Plaintiffs, and (3) any risks specific to the insurance company guaranteeing the benefits of each Plaintiff. Absent such allegations, Plaintiffs lack standing.

### 1.    *Plaintiffs Do Not Allege that Insurer Failure Is Imminent or Likely.*

As the Fifth Circuit observed, "constitutional standing for defined-benefit plan participants requires imminent risk of default by the plan, such that the participant's benefits are adversely affected." *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 546 (5th Cir. 2016). Plaintiffs do not allege that the insurer responsible for their benefits is currently unable to pay benefits or that it is underfunded. Nor do they allege that that the insurer will become insolvent imminently or even during a specific timeframe in the future. Instead, they merely allege that Athene's investments are riskier than other insurers, which might lead to insolvency "sooner or later." Compl. ¶ 64.

That is precisely the type of speculative injury that courts have time and again held is insufficient to confer Article III standing. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Article III. A threatened injury must be 'certainly impending' to constitute injury in fact."); *Viasat*, 47 F.4th at 778 ("A 'speculative' possibility of future injury does not suffice.").

The D.C. Circuit has explained that courts' "authority to reject as speculative allegations of future injuries is well-established." *United Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir. 1989). To determine standing, a court will "distinguish[] allegations of facts, either historical or otherwise demonstrable, from allegations that are really predictions." *Id.* It then "reject[s] as overly speculative those links which are predictions of future events … and those which predict a future injury that will result from present or ongoing actions—those types of allegations that are not normally susceptible of labeling as 'true' or 'false.'" *Id.* Under these standards, Plaintiffs' allegations are the quintessential types of speculative predictions that cannot confer standing. The mere allegation that Athene invests in riskier assets is hardly the type of concrete allegation necessary to show imminent harm. *See Lee*, 837 F.3d at 545–46.

Plaintiffs also fail to include any allegations about the expected timing of their possible future injuries. As courts have explained, "to avoid stretching the imminence requirement 'beyond its purpose,' … the Court must be able to say *something* about a future injury's timing." *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 656 F. Supp. 3d 137, 152 (D.D.C. 2023) ("*PhRMA*") (quoting *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293–94 (D.C. Cir. 2007)). In other words, "imminence requires some temporal certainty." *Id.* But the Complaint provides no such certainty. It contains no allegations about *when* Athene's investments *may* fail or *when* Plaintiffs *may* experience a reduction in benefits. As noted, the closest Plaintiffs come to alleging the possible timing of their injury is their observation that Athene's investments may fail "sooner or later." Compl. ¶ 64. But of course, this truism is the precise type of "temporal guesswork" that amounts to "mere speculation, which cannot support a finding of imminence." *PhRMA*, 656 F. Supp. 3d at 153.

## 2. Plaintiffs Do Not Plausibly Allege that Plaintiffs Face a Substantially Increased Risk, and Substantial Probability, of Harm to Their Benefits.

Plaintiffs further claim that Defendants breached their fiduciary duties because the transactions with Athene "place[] retirees and beneficiaries' retirement assets at risk of Athene's insolvency," Compl. ¶ 90, and create "an increased and significant risk that they will not receive the benefits payments to which they are entitled," *id.* ¶¶ 106, 112. "To show an injury from increased risk, Plaintiffs must 'show both (i) a substantially increased risk of harm and (ii) a substantial probability of harm with that increase taken into account.'" *PhRMA*, 656 F. Supp. at 150 (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015)). This standard is "another way to assess imminence," and therefore "'compels a *very strict understanding* of what increases in risk and overall risk levels can count as substantial.'" *Id.* (quoting *Food & Water Watch*, 808 F.3d at 915) (emphasis added). Under this test, too, if the court "'can only speculate' about whether and how an injury will occur, that is 'ordinarily fatal to standing.'" *Id.* (quoting *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017)).

The Complaint fails to allege any substantially increased risk of harm. Plaintiffs allege that Athene is a "much riskier annuity provider" than some other insurers because Athene's bonds sell for a relatively higher price and have a higher "option-adjusted spread" than those of other insurance providers. Compl. ¶¶ 70–71, 73–75.[5] But these metrics, standing alone, do not mean that Athene carries a substantially increased risk, and a substantial probability, of *harm to Plaintiffs*

---

[5] The image Plaintiffs use in the Complaint to allege that Athene has the highest alleged "economic loss to beneficiaries" is from a dynamic webpage that updates quarterly. Compl. ¶ 70. In the most recent update from March 31, 2024, the same webpage indicates that Athene presents a 7.4% "economic loss to beneficiaries." NISA, *PRT Credit Risk Monitor*, https://www.nisa.com/market-updates/pension-risk-transfer-prt/, cited at Compl. ¶ 70 (Ex. N).

because they do nothing to suggest that Plaintiffs will stop receiving their benefits. *See Thole*, 590 U.S. at 547. Bond prices are not a means to determine whether an insurance company will ultimately pay the insured. Bond prices and option-adjusted spread are designed to be catch-all measurements of a financial instrument's "economic value," i.e., its "ability to generate income." *See* Office of the Comptroller of the Currency, *Risk Measurement*, 2020 WL 1692720, at *3 (2020); *see also* Andrey D. Pavlov & Susan M. Wachter, *Systemic Risk and Market Institutions*, 26 Yale J. on Reg. 445, 448 (2009) (option-adjusted spread is used to determine transaction price and "fundamental value of the asset"). They are built on "sophisticated method[s]" and "model[s]" measuring the sum of a bond's economic value, not simply the bond issuer's risk of default. *See Risk Management*, 2020 WL 1692720 at *3 & n.14. They cannot be used as a means to establish a plausible claim that Athene's annuities are necessarily riskier than those of other insurance providers—let alone that the risk will result in an imminent impairment to Plaintiffs' benefits.

Under *Thole*, the only harm to former defined benefit-plan participants that counts for Article III standing is the risk of default. *See* 590 U.S. at 546 ("[A] bare allegation of plan underfunding does not itself demonstrate a substantially increased risk that the plan and the employer would both fail."); *see also Lee*, 837 F.3d at 545 (explaining that injury to defined benefit plan participants "is attenuated as, prior to default under the plan, 'the employer typically bears the entire investment risk,'" and even if there is a shortfall "the impact on participants is not certain" since there are backstops). Similarly here, Plaintiffs would need to allege more than just that they have concerns about riskiness of the payor of their benefits. Plaintiffs do not face any additional exposure to risk based on the ordinary fluctuation of Athene's returns on its investments. *See Thole*, 590 U.S. at 540. The only harm that could affect them is not receiving their benefits, which does not happen just because Athene's investments are allegedly riskier than those of other

insurance providers.  *Cf. LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255 (2008)

("Misconduct by the administrators of a defined benefit plan will not affect an individual's

entitlement to a defined benefit *unless it creates or enhances the risk of default by the entire plan*."

(emphasis added)).

Plaintiffs also attempt to suggest that they face an increased risk of harm because Athene's

reinsurance system is alleged to involve reinsurance providers based in Bermuda.  Compl. ¶¶ 51–

52, 62.  But the sources cited in the Complaint confirm that several other significant insurance

companies, such as MetLife and AIG, also rely on Bermuda-based reinsurers.  *See* Ex. M at 6.

And notably, Plaintiffs do not include any allegations that the two named reinsurance entities—

Athene Life Re and Athene Annuity Re—are nearing insolvency.  Plaintiffs' generalized

grievances about Bermuda-based reinsurance companies do not come close to plausibly alleging

that Plaintiffs' benefits face a substantial risk of harm sufficient to confer an imminent injury.

Plaintiffs further fail to establish a substantial risk of harm because there are several

conjectural links between where Plaintiffs stand today and the eventual possibility that they might

not receive their benefits.  For example, insolvency by the insurer guaranteeing each Plaintiff's

benefit depends upon, among other things, (1) the insurer suffering catastrophic losses; (2) the

insurer failing to sufficiently mitigate any such losses to preserve Plaintiffs' benefits; (3) the

insurer's inability to secure alternative funding sources; and (4) the insurer's reinsurance

companies' inability to compensate the insurer for any losses.

Moreover, even if there were sufficient likelihood of *all of those steps* occurring, Plaintiffs

still would not have adequately alleged an impairment of their benefits.  Plaintiffs acknowledge

that, when an insurer fails, SGAs protect retirees benefits.  Compl. ¶¶ 34, 36; *see also, e.g.*, 29

C.F.R. § 4041.27(b)(3)(ii) ("[A]ll states, the District of Columbia, and the Commonwealth of

Puerto Rico have established 'guaranty associations' to protect policy holders in the event of an insurance company's financial failure."). The Complaint alleges that the limit on state guaranty coverage "in most states" is $250,000 and that "a pensioner could exhaust [the limit] in mere years," Compl. ¶ 36, but they make no allegation that the Plaintiffs in this case actually have benefits that exceed the applicable state guaranty limits.

Furthermore, each contract is backed by a separate account of the insurer. *See, e.g.*, Ex. B § 1.5; Ex. C § 1.5. The assets supporting the liabilities are transferred to the separate account upon the purchase of the contract. *Id.* This means that liabilities are fully funded on day one. *See* Ex. H at 29 ("Separate accounts are protected from the liabilities of the insurer's general account, yet they generally benefit from support from the general account."). In the event of insolvency of the insurer, the assets in the separate account are available only to group annuity contracts supported by the account. *See id.*; *see also* N.Y. Ins. Law § 7435(b); Iowa Code §§ 507C.2.14.b, 508A.1. Plaintiffs make no allegations that the separate accounts of either Athene Iowa or Athene New York are underfunded or would not be sufficient in the event of an insolvency by either Athene Iowa or Athene New York.

Taken together, this "protracted chain of causation fails both because of the uncertainty of several links and because of the number of speculative links that must hold for the chain to connect the challenged acts to the asserted particularized injury." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 670 (D.C. 1996) (en banc). Indeed, there is no basis to conclude, from the face of the Complaint, that Plaintiffs face the "certainly impending" harm of not receiving their benefits. *See, e.g.*, *Riley v. Murdock*, 83 F.3d 415, 1996 WL 209613, at *1 (4th Cir. 1996) (unpublished) (rejecting claim involving the failure of the insurance company Executive Life, noting "that [plaintiff] and her class have received every dollar of benefits to which they were entitled under

the Plan"); *Goodsell v. Tchrs. Health Trust*, 2024 WL 2750467, at *5 (D. Nev. May 29, 2024) (dismissing plaintiffs' ERISA claims for lack of standing because they "have not plausibly alleged that the mismanagement was so egregious that it substantially increased the risk the plan and [guarantor of plan] would fail").

Plaintiffs do not allege that Athene has failed to provide any of their payments, or that they have lost a single penny. They simply worry that Athene's investments, like any investments, carry some degree of risk, and that "sooner or later," things may go wrong for Athene, *see* Compl. ¶ 64. But rather than providing allegations of past failure or other indicia to plausibly suggest that Athene may imminently fail, Plaintiffs allege that Athene "is one of the leading players in the PRT market, having completed at least 45 transactions totaling $50.5 billion and covering over 550,000 plan participants." Compl. ¶ 50. The mere possibility that a leading player like Athene may someday default on its obligations and the risk that Plaintiffs may someday not receive their benefits payments is not sufficient to establish a concrete injury for purposes of Article III. *See David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) (rejecting risk-based theory of standing for defined benefit plan participants "not least because they rest on a highly speculative foundation lacking any discernible limiting principle"); *Lee*, 837 F.3d at 546 ("[R]egardless of whether the plan is allegedly under- or over-funded, the direct injury to a participants' benefits is dependent on the realization of several additional risks, which collectively render the injury too speculative to support standing."). *Cf. Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016) (describing chain of several speculative contingencies before government defaults on debt).

Further underscoring that Plaintiffs fail to connect the vague possibility of future insurer failure to the actual loss of their benefits is the fact that the Complaint does not even identify which Athene entity's failure would create a risk of harm to each Plaintiff. Plaintiffs allege that, under

the transactions at issue, the Alcoa retirees' pension benefits were each transferred to one of two separate insurance companies, Athene Iowa and Athene New York—but then quickly collapses these entities together and refers to them collectively as "Athene." Compl. ¶ 3. In reality, though, these companies are distinct corporate entities, and the general rule is that courts will treat them as separate entities. *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 1, 8 (D.D.C. 2013); *see also* Compl. ¶¶ 13–16 (referencing only benefits from generic "Athene").[6] Under each Contract, one of the two separate insurance companies is obligated to pay the benefits due under the Contract. *E.g.*, Ex. B at 2 (defining "Athene" as Athene Iowa); Ex. C at 2 (defining "Athene" as Athene New York). The absence of any concrete allegations about which Athene entity pays each Plaintiff's benefits and each specific entity's likelihood of failure further demonstrates that Plaintiffs lack standing.

In sum, Plaintiffs' purported injuries do not come close to satisfying Article III's requirement that they allege an imminent risk of harm to establish standing. *Clapper*, 568 U.S. at 409. Because they are former participants of a defined benefit plan, Plaintiffs' only risk of harm is an impairment to their pension benefits. Plaintiffs have entirely failed to allege that they have already suffered that injury or that there is a substantial risk that they will suffer that injury under the D.C. Circuit's "very strict understanding of what increases in risk and overall risk levels can count as substantial." *Food & Water Watch*, 808 F.3d at 915. These defects are fatal to Plaintiffs' claims.

---

[6] Although the Complaint notes that Athene New York provides annuity benefits who reside in New York, Compl. ¶ 79 n.106, the Complaint does not set forth where each Plaintiff resided at the time the annuity contracts were purchased.

### C.    Plaintiffs Have Not Alleged Harm to the Plan.

In addition to the reasons stated above, Plaintiffs' claims under 29 U.S.C. § 1132(a)(2) also fail for lack of Article III standing because Plaintiffs do not allege any harm to the Alcoa defined benefit plans.    To bring a claim under Section 1132(a)(2), a plaintiff must show harm to an employee benefits plan as a whole.    *See* 29 U.S.C. § 1132(a)(2); 29 U.S.C. § 1109; *see also Duke v. Luxottica U.S. Holdings Corp*., 2023 WL 6385389, at *6 (E.D.N.Y. 2023) (dismissing Section 1132(a)(2) claim because plaintiff could not "show that any recovery to the Plan, such as an increase in its assets, would affect her benefits" (citing *Thole*, 590 U.S. at 541) (emphasis omitted)).    The Supreme Court has observed, "our review of ERISA as a whole confirmed that §§ 502(a)(2) and 409 protect 'the financial integrity of the plan.'" *LaRue*, 552 U.S. at 254 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)).    Here, Plaintiffs allege that "Defendants' search was biased in favor of the lowest-cost provider," Compl. ¶ 105—which, if true, would *benefit* the Plan.    For this independent reason, Plaintiffs lack standing to bring their Section 1132(a)(2) claim.

## II.    Plaintiffs Fail To State A Claim Under ERISA.

The Complaint should also be dismissed because Plaintiffs fail to state a claim against either Fiduciary Counselors or the Alcoa Defendants.

### A.    Defendants Did Not Breach Any Fiduciary Duties (Counts I and II).

Plaintiffs fail to state a claim for breach of fiduciary duties for several reasons.    *First*, the decision to transfer liabilities from the Alcoa pension plan to an insurance company is not a fiduciary decision and therefore is not subject to ERISA's fiduciary duties.    *Second*, because Plaintiffs provide no allegations supporting a claim that the decision by the Committee to appoint Fiduciary Counselors or the decision by Fiduciary Counselors to select Athene was made to benefit anyone other than plan participants and beneficiaries, Plaintiffs' duty of loyalty claim fails as a

matter of law.  *Third*, while the decision by Fiduciary Counselors to select Athene is subject to the duty of prudence, Plaintiffs fail to allege any facts suggesting that the process employed by Fiduciary Counselors was flawed.

### 1.    *A Decision to Pursue a PRT Is Not a Fiduciary One.*

ERISA imposes fiduciary duties on those who act "in the capacity of manager, administrator, or financial adviser to a 'plan,'" *Pegram v. Herdich*, 530 U.S. 211, 222 (2000), including that fiduciaries must discharge their duties "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1); Compl. ¶ 103.  But importantly, not every decision an employer makes about its plan is a fiduciary decision.  *See Pegram*, 530 U.S. at 225 ("Employers … can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers … or even as plan sponsors.").  Courts have explained that "an employer may, at different times, wear 'hats' as both a sponsor and administrator," and "'fiduciary duties under ERISA are implicated only when it acts in the latter capacity.'"  *Lee*, 837 F.3d at 535 (first quoting *Pegram*, 530 U.S. at 225–26, then quoting *Beck*, 551 U.S. at 101).  So when a plaintiff alleges breach of an ERISA fiduciary duty, the court first asks whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint."  *Pegram*, 530 U.S. at 226.

Alcoa's decision to transfer liabilities from its pension plan to an insurance company, in the form of a partial PRT, cannot support Plaintiffs' claims.  Plaintiffs dedicate much of their Complaint to describing the perceived deficiencies of PRTs.  Compl. ¶¶ 27–48.  But it is settled law that an employer's decision to perform this type of transaction is a settlor function—not a fiduciary function—and ERISA therefore does not impose any fiduciary obligations on the decision.  *See Beck*, 551 U.S. at 101 ("It is well established in this Court's cases that an employer's decision *whether* to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary

obligations."); *Lee*, 837 F.3d at 537 ("Consistent with *Beck*, … we consider the decision to transfer pension assets outside ERISA coverage as a sponsor decision immune from fiduciary obligations").  *See also* Ex. H at 2 ("The Department considers the decision to terminate a defined benefit pension plan (or to amend it to lift out a participant population) a settlor function that is not subject to ERISA's fiduciary standards.").  As a result, Plaintiffs cannot sustain their breach-of-fiduciary-duty claims against any of the Defendants based on Alcoa's decision to transfer Plaintiffs' benefits into an annuity.

## 2.    *Defendants Did Not Breach the Duty Of Loyalty.*

Plaintiffs' breach-of-fiduciary-duty claims rely, in part, on their suggestion that Defendants selected Athene "to advance corporate interests by saving Alcoa Defendants money and enhancing corporate profits," rather than for Plaintiffs' best interests.  Compl. ¶ 105.  According to Plaintiffs, Defendants therefore "breached their duty of loyalty."  *Id.*

ERISA requires that fiduciaries act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).  To state a claim for breach of the duty of loyalty, plaintiffs "must allege facts that permit a plausible inference that the defendant engaged in transactions involving self-dealing or [that] otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests."  *Bloom v. AllianceBernstein L.P.*, 2024 WL 1255708, at *5 (S.D.N.Y. Mar. 25, 2024).  And the allegations must "support[] an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else, and to the expense of plan participants."  *Kohari v. MetLife Grp., Inc.*, 2022 WL 3029328, at *8 (S.D.N.Y. 2022).  Actions that "incidentally benefit[] the plan sponsor do[] not violate the duty of loyalty so long as, 'after careful and impartial investigation, the plan fiduciary reasonably concludes that the action is best to promote the interests of participants and beneficiaries.'"  *Id.* (quoting *Donovan v. Bierwirth*,

680 F.2d 263, 271 (2d Cir. 1982)) (cleaned up).  Plaintiffs fail to satisfy these standards as to any of the Defendants.

*Alcoa Defendants.*  Plaintiffs' attempt to assert a claim against the Alcoa Defendants for breach of the duty of loyalty rests on their allegation that "Defendants selected Athene … to save [Alcoa Defendants] money."  Compl. ¶ 105.  However, this allegation is fatally undermined by the Complaint's allegations that Fiduciary Counselors—not Alcoa—"assume[d] full fiduciary responsibility" for the selection of an annuity provider for the PRTs.  *Id.* ¶ 80.  Plaintiffs allege that Alcoa's Benefits Committee "appointed Fiduciary Counselors as an independent fiduciary over the PRTs."  *Id.*  When the Alcoa Defendants appointed Fiduciary Counselors to administer the selection process and determine the best provider for the PRTs, they discharged all their fiduciary duties with respect to the selection of the insurer for the PRTs.  *See* 29 C.F.R. § 2509.75–8(D-4) (A board of directors' "responsibility, and, consequently, their liability, is limited to the selection and retention of fiduciaries.").  In other words, the Complaint avers that the Alcoa Defendants engaged Fiduciary Counselors as an independent fiduciary to select the insurer for the PRTs.  Accordingly, there can be no breach of fiduciary duty claim against the Alcoa Defendants for the insurer selection.  *Burke v. Boeing Co.*, 42 F.4th 716, 727–28 (7th Cir. 2022) (holding an in-house committee and related defendants that delegated their fiduciary duties to an outside third party "cannot be liable for breaching fiduciary duties that they simply did not have").

Rather, the only decision that could possibly support a breach of loyalty claim against the Alcoa Defendants was the threshold decision to appoint Fiduciary Counselors.  *See Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984) (employers "are fiduciaries to the extent that they performed fiduciary functions in selecting and retaining plan administrators").  But Plaintiffs do not include any allegations that the Alcoa Defendants' selection of Fiduciary Counselors in any way benefitted

the Alcoa Defendants or was made for any purpose other than carrying out the administration of the plan.  There is therefore no basis to conclude that the Alcoa Defendants breached their fiduciary duty of loyalty, and the claims against them should be dismissed.  *See Leber v. Citigroup 401(k) Plan Inv. Comm.*, 2015 WL 6437475, at *7 (S.D.N.Y. 2015) ("[W]here an employer … has delegated the discretionary authority to manage a plan or dispose of its assets, and its *only* non-delegated authority relates to the ability to hire and fire [the administrators], the employer's fiduciary obligations extend *only* to those acts" (emphasis in original)); *Independent Ass'n of Publishers' Emps., Inc. v. Dow Jones & Co., Inc.*, 671 F. Supp. 1365, 1367 (S.D.N.Y. 1987) (dismissing claims against employer because "[n]owhere in the amended complaint is there a claim that [employer's] breach of its fiduciary obligations was with respect to its power" to select and retain administrator).

**Mr. Oplinger.**  The duty of loyalty claims against Mr. Oplinger should also be dismissed for the independent reason that "[o]fficers of a corporation do not fall within ERISA's definition of an 'employer,' and thus officers cannot be held personally liable for a corporation's alleged ERISA violations by virtue of their relationship to the employer alone."  *Downs v. JSP Cos.*, 297 F. Supp. 3d 163, 166–67 (D.D.C. 2018).  Instead, they can be liable "only when they act as the 'alter egos' of their corporations or when circumstances permit piercing the corporate veil."  *Id.* The Complaint lacks allegations to support either of these possibilities.  In fact, it does not even include any factual allegations pertaining to Mr. Oplinger besides the allegation that, "[a]s of 2016", he "was a member of the Benefits Committee."  Compl. ¶ 20.  Without sufficient allegations to pierce the corporate veil, all claims against Mr. Oplinger must be dismissed. *See Downs*, 297 F. Supp. 3d at 167–68 (dismissing ERISA claims against defendant's president and owner because complaint did not allege he is personally liable); *Oliver v. Black Knight Asset*

*Mgmt., LLC*, 812 F. Supp. 2d 2, 16 (D.D.C. 2011) (dismissing ERISA claims against individual defendant where the plaintiffs "failed ... to allege that [the defendant] did anything outside of his role as President and CEO of the Company that would permit him to be held personally liable under the veil piercing or alter-ego theories ....").

***Fiduciary Counselors.***  The duty of loyalty claim against Fiduciary Counselors likewise fails because there are no well-pleaded allegations that Fiduciary Counselors incurred any benefit for its selection of Athene.  Plaintiffs do not allege that Fiduciary Counselors in any way benefitted from, or had any economic interest in, the selection of Athene in particular.  The Complaint acknowledges that its compensation was a flat fee paid by the Plan.  Compl. ¶ 80.  Furthermore, Fiduciary Counselors was a fiduciary for the entire Plan, and the Complaint acknowledges that only a portion of the Plan's liabilities were transferred to Athene.  Compl. ¶ 32 (acknowledging that the Alcoa transactions were "partial buyouts").  Any allegation that Fiduciary Counselors sought to save money for the Plan is merely consistent with Fiduciary Counselors' duty to take into account the prudent use of the Plan's assets—by definition, purchasing a more expensive annuity would have left less money for the Plan to pay the benefits that were not transferred.  Without any well-pleaded allegation that Fiduciary Counselors was motivated by self-interest, Plaintiffs cannot sustain their claims for breach of the duty of loyalty.[7]

---

[7] Plaintiffs' claims are unclear about which breach-of-fiduciary-duty claims are raised against which Defendants for which conduct.  Count I is raised against all Defendants and seems to focus on the duty of loyalty, Compl. ¶ 105, while making passing reference to the duty of prudence, Compl. ¶ 104.  Count II is raised against only Fiduciary Counselors and appears to focus on the alleged process Fiduciary Counselors employed to select Athene, which implicates the duty of prudence.  Compl. ¶¶ 111–12.  Defendants here address the duty of loyalty first, then the duty of prudence, but no matter how Plaintiffs' claims are construed, they should be dismissed as to all Defendants.

### 3.   *Defendants Did Not Breach the Duty Of Prudence.*

Plaintiffs' allegation that Defendants breached ERISA's duty of prudence likewise fail. The duty of prudence is measured by the fiduciary's process, and Plaintiffs' allegations fall far short of establishing a reasonable inference that the fiduciaries' process was flawed.  *First*, the only fiduciary act taken by any of the Alcoa Defendants was the Committee's selection of Fiduciary Counselors, and there are no allegations of any flaw in the process used to make that selection. *Second*, with respect to Fiduciary Counselors' selection of Athene, Plaintiffs allege only that Athene's reinsurance arrangement and investments include higher risk than other insurers, but make no allegations regarding the many other factors that are considered when selecting an insurer or otherwise allege facts calling into question the process used by Fiduciary Counselors.

### a)        *The Duty of Prudence Is a Process-Based Inquiry.*

When managers, administrators, and financial advisers act as fiduciaries, ERISA requires that they "employ appropriate methods to investigate the merits of the investment and to structure the investment as well as to engage in a reasoned decision-making process, consistent with that of a prudent man acting in a like capacity." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014) (cleaned up).  Put differently, "[i]n evaluating whether a fiduciary has acted prudently, [courts] therefore focus on the process by which it makes its decisions rather than the results of those decisions." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). "[W]here a plaintiff fails to allege facts about a defendant fiduciary's decision-making process, the claim may survive only if there are enough circumstantial factual allegations to allow the court to reasonably infer the process was flawed." *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *5 (S.D.N.Y. 2019) (citing *Pension Benefit Guar. Corp. ex rel. St. Vincent's Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)).

    **b)**  ***Plaintiffs Make No Allegations Regarding the Alcoa Defendants'***
        ***Process of Selecting Fiduciary Counselors.***

Under these standards, Plaintiffs have not plausibly alleged that Defendants breached any of their fiduciary duties. As explained above, the Alcoa Defendants had no fiduciary obligations, except that the Committee discharged its fiduciary duties by appointing Fiduciary Counselors to administer the process of selecting an annuity provider. *See supra* at 27–28. The Complaint lacks *any allegations* about the process the Committee used to select Fiduciary Counselors, and there is therefore no basis to conclude that the Committee breached the duty of prudence. While the Committee may retain a fiduciary duty to monitor Fiduciary Counselors' activity—which they have not breached, *see infra* at 39–40— Plaintiffs' claims against the Alcoa Defendants relating to the selection of Athene cannot proceed. *See Dow Jones*, 671 F. Supp. at 1367.

    **c)**  ***Plaintiffs Fail To Establish a Reasonable Inference that Fiduciary***
        ***Counselors' Selection of Athene Was Flawed.***

Plaintiffs fail to include any well-pleaded allegations about the *process* Fiduciary Counselors used to select Athene. Plaintiffs' theory of liability instead relies almost exclusively on their general distaste for Athene, and the alleged "clear evidence" that Athene was a risky bet. *See* Compl. ¶ 90. From this, Plaintiffs draw the inference that Fiduciary Counselors' process must have been deficient since, in their view, no thorough process could have resulted in Athene's selection. *Id.* ¶¶ 88, 90. Yet Plaintiffs' allegations do not establish a reasonable inference that Fiduciary Counselor's process was necessarily flawed.

As a threshold matter, Plaintiffs' own allegations belie their conclusion. As Plaintiffs note, "Athene is one of the leading players in the PRT market, having completed at least 45 transactions totaling $50.5 billion and covering 550,000 plan participants." Compl. ¶ 50. Because Plaintiffs base their claims entirely on Athene's purported weaknesses—rather than any deficiencies with *this particular selection process*—the upshot of Plaintiffs' argument is that all fiduciaries who

have completed PRTs with Athene have breached their fiduciary duties. Neither ERISA nor any other legal authority supports such a broad proposition. *See Morgan Stanley*, 712 F.3d at 716 (ERISA's "standard focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." (cleaned up)).

The only authority Plaintiffs cite to support their breach-of-fiduciary-duty claims is non-binding guidance from the Department of Labor (DOL) known as Interpretive Bulletin 95-1. *See* C.F.R. § 2509.95-1(c). That guidance sets forth various factors that fiduciaries should consider in making their selection, including: (1) "the quality and diversification of the annuity provider's investments"; (2) "the size of the insurer relative to the proposed conduct"; (3) "the level of the insurer's capital and surplus"; (4) the annuity provider's "lines of business," and other "indications of [its] exposure to liability"; (5) the annuity contract's "structure" and the "guarantees supporting the annuities, such as the use of separate accounts"; and (6) "the availability of additional protection through state guaranty associations and the extent of their guarantees." *Id.* Tellingly, Plaintiffs do not allege that Fiduciary Counselors failed to apply each of these factors—nor could they.

Instead, Plaintiffs seize on language in Interpretive Bulletin 95-1 that says fiduciaries should obtain "the safest annuity available," to suggest that Fiduciary Counselors breached ERISA by choosing Athene. But for several reasons, Plaintiffs' reasoning misses the mark.

*First*, Plaintiffs indicate that the "safest annuity" standard means that there is only one insurance company that a fiduciary may select—the safest one. Yet, a closer examination of Interpretive Bulletin 95-1 shows that is not what DOL means. DOL sets forth several factors to consider and concludes: "A fiduciary may conclude, after conducting an appropriate search, that

more than one annuity provider is able to offer the safest annuity available." C.F.R. § 2509.95-1(c). In other words, a fiduciary may take into account many factors and conclude that more than one insurer offers a safe alternative that may be selected.

*Second*, the guidance plainly states that a fiduciary may determine, based on the circumstances, that "it would be in the interests of participants and beneficiaries to do otherwise." *Id.* DOL "recognize[d] that there are situations where it may be in the interest of the participants and beneficiaries to purchase other than the safest available annuity." *Id.* § 2509.95-1(d). Here, moreover, the transactions in question were only partial PRTs. As such, Fiduciary Counselors owed fiduciary duties both to the employees whose benefits were being transferred and to those who would remain in the Plan. *Cf. Lee*, 837 F.3d at 541 (noting that it is reasonable for fiduciary to consider costs to plan). Under these circumstances, a fiduciary may balance annuity providers' costs and risks to ensure the maximum benefits available to *all* retirees and other plan participants. Put differently, it would not "be in the interests of participants and beneficiaries" as a whole to select a "marginally safer, but disproportionately more expensive," annuity. *Id.* § 2509.95-1(d).

*Third*, the cases that have analyzed Interpretive Bulletin 95-1 have squarely rejected Plaintiffs' interpretation that fiduciaries are only permitted to choose the single safest annuity provider. Indeed, courts have expressly held that such a demanding standard is incorrect as a matter of law. *See Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 298 (5th Cir. 2000) ("[W]e are not persuaded that § 1104(a) imposes on fiduciaries the obligation to purchase the "safest available annuity" in order to fulfill their fiduciary duties."); *Riley v. Murdock*, 83 F.3d 415, 1996 WL 209613, at *1 (4th Cir. 1996) (unpublished) (declining to "adopt a standard that an ERISA fiduciary *must select* the *safest* available annuity to assure payment of the benefits that a plan promises to its participants," and explaining that "no federal court has adopted such a standard"

(emphasis in original)).  *Cf. Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) ("No authority requires a fiduciary to pick the best performing fund.").  Instead, ERISA's fiduciary standard is focused on the process rather than the result.  *See Bussian*, 223 F.3d at 298 ("The Bulletin's standard focuses on the quality of the selected annuity.  The standard we apply focuses instead on the fiduciary's conduct.").  This Court should reach the same conclusion.

> ### d)    *Plaintiffs Fail to Allege That Fiduciary Counselors Could Have Selected a Superior Annuity Provider.*

While Plaintiffs fault Fiduciary Counselors for selecting Athene, they do not include any allegations suggesting that a safer alternative was available.  *Cf. Amgen, Inc. v. Harris*, 577 U.S. 308, 310 (2016) (per curiam) (for breach of fiduciary duty based on inside information, plaintiff "must plausibly allege an alternative action that the defendant *could have taken* that would have been consistent with the securities laws …" (emphasis added)); *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022) ("[T]he key to stating a plausible excessive-fees claim is to make a like-for-like comparison.").  Plaintiffs gesture at the idea that Fiduciary Counselors should have selected "traditional annuity providers," such as "New York Life and Prudential," *see* Compl. ¶¶ 92, 95, but there are no factual allegations suggesting that Fiduciary Counselors *actually had the option* to select an annuity from these providers.  In other words, there are no allegations that these "traditional annuity providers" offered suitable annuities that Fiduciary Counselors could have selected.  *See, e.g.*, *Matousek*, 51 F.4th at 280 (affirming dismissal of ERISA claims because "without a *meaningful* benchmark, the plaintiffs have not created a plausible inference that the decision-making process itself was flawed" (emphasis in original)); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1157–58 (10th Cir. 2023) (similar); *LaLonde v. Mass. Mut. Ins. Co.*, 2024 WL 1346027, at *8 (D. Mass. Mar. 29, 2024) (dismissing claim because reference to industry benchmark was insufficient to show imprudent selection of fund); *Gonzalez v. Northwell,* 632 F.

Supp. 3d 148, 167 (E.D.N.Y. 2022) ("A plaintiff 'must plead administrative fees that are excessive in relation to the specific services the recordkeeper provided to the specific plan at issue.'"). Without allegations about the options Fiduciary Counselors faced, Plaintiffs cannot sustain their claim that Fiduciary Counselors failed to select the "safest" annuity.

Plaintiffs also fail to show that they have suffered any losses from the alleged breaches of fiduciary duties. *See supra* at 21–22. This defect is fatal because "it is not enough to show that the defendant's conduct failed to meet the high standard erected by the duty of prudence; the plaintiff must also prove that a loss resulted from that failure." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 981 (2d Cir. 2023); *see also* 29 U.S.C. § 1109(a) ("Any person who is a fiduciary … shall be personally liable to make good to [the] plan any losses to the plan resulting from [a] breach."). But as noted above, Plaintiffs have not suffered *any* losses from the alleged breaches— they have received all their benefits payments from Athene to date. *See supra* at 13. Without any allegations establishing losses, they cannot state a claim against any of the Defendants for breach of fiduciary duties.

Finally, Plaintiffs' allegations are insufficient to suggest that each Defendant is subject to co-fiduciary liability under 29 U.S.C. § 1105 for other Defendants' alleged breaches. To start, Plaintiffs have failed to allege any plausible claim in the first instance that any Defendant breached a fiduciary duty. *See supra* at 26–33. But even if there were a breach of fiduciary duty by one Defendant, co-fiduciary liability under Section 1105 applies only if a fiduciary has actual knowledge of another fiduciary's breach. *See, e.g.*, *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011) ("Under [Section 1105], the fiduciary must know the other person is a fiduciary with respect to the plan, must know that he participated in the act that constituted a breach, and must know that it was a breach.") (citation omitted)). Here, Plaintiffs merely include the stray

conclusory allegation that "[e]ach Defendant knowingly participated in the breach of the other Defendants …."  Compl. ¶ 108.  But Plaintiffs do not allege *any facts* about any Defendants' purported knowledge about the other Defendants' alleged breaches.  *See infra* at 39–40.  And without such facts, any effort to impute liability under Section 1105 fails.

### B.    Plaintiffs' Prohibited Transactions Claim Fails (Count III).

Plaintiffs next allege that Defendants engaged in a "prohibited transaction" under 29 U.S.C. § 1106(a)(1)(C).  The general purpose of Section 1106 is to "supplement[] the fiduciary's general duty of loyalty … by categorically barring certain transactions deemed likely to injure the pension plan."  *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 32 (D.D.C. 2018) (internal quotation marks omitted).  It is inapplicable here.

Section 1106 prohibits the "furnishing of goods, services, or facilities between the plan and a party in interest."  29 U.S.C. § 1106(a)(1)(C).  The term "parties in interest" is defined in relevant part to include any person "providing services to [a] plan."  *See id.* § 1002(14)(A).  Notably, sellers of goods are *not* parties in interest.  As a result, the "furnishing of goods" can provide the basis for a prohibited transaction claim only if the seller is otherwise a party in interest.

Plaintiffs fail to state a prohibited transactions claim because they offer no plausible, non-conclusory allegation that Athene provided services to the Plans.  Rather, Plaintiffs allege that Athene sold annuity contracts to Alcoa.  *See* Compl. ¶¶ 80–84.  Under ERISA, the sale of an annuity contract transfers liability from a pension plan to an insurer such that, in a single transaction, the retiree ceases to be a participant in the plan.  *See* 29 C.F.R. § 2510.3-3(d)(2)(ii). The sale of annuity contracts is therefore not the provision of a service; it is the sale of a good.  *See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 259 (1995) ("[A]nnuities are widely recognized as … investment products." (citing D. Shapiro & T. Streiff, Annuities 7 (1992)); DOL Opinion Letter No. 76-36, 1976 WL 5051 (Jan. 15, 1976) ("[T]he sale

by an insurance company of a group insurance policy to an employer to fund an employee benefit plan would not alone cause the insurance company to become a party in interest to the plan."). Because Athene is not a "party in interest" by virtue of its sale of annuity contracts to the Plans or otherwise, Section 1106(a)(1)(C) simply does not apply. *See Sellers*, 316 F. Supp. 3d at 34 ("Congress drew a distinction between prohibiting certain transactions with anyone, and prohibiting those transactions with a party in interest."); *Marshall v. Carroll*, 1980 U.S. Dist. LEXIS 17767, at *27 (N.D. Cal. Apr. 18, 1980) ("[T]he fact that an insurance company provides insurance to a plan does not transform it into a party in interest within the meaning of [29 U.S.C. § 1002(14)(b)]."), *aff'd sub nom. Donovan v. Carroll*, 673 F.2d 1337 (9th Cir. 1982).

Plaintiffs also allege that Defendants dealt with the Plans' assets in their own interest in violation of Section 1106(b) by "using pension trust assets to purchase Athene annuities instead of the safest available annuity so as to increase Alcoa's corporate profits."  Compl. ¶ 120. However, as explained above, the Committee merely engaged Fiduciary Counselors. *Id.* ¶ 80.  The Committee (and the other Alcoa Defendants) did not select Athene to be the annuity provider—the selection that forms the basis of Plaintiffs' Section 1106 claim, *see* Compl. ¶¶ 118–120—and the Section 1106 claim therefore cannot proceed against the Alcoa Defendants. *See Deluca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 748 (6th Cir. 2010) ("Because [defendant] was not acting in a fiduciary capacity … [defendant] did not violate § 1106(b)(2).").  While Fiduciary Counselors did select Athene, there is no allegation as to how that selection benefitted Fiduciary Counselors.  *See Spink*, 517 U.S. at 893 (explaining that Section 1106 prohibits "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length").  Furthermore, on the face of the allegations, Plaintiffs acknowledge that the annuity contract was purchased with Plan assets. *Id.* ¶ 30.  Accordingly, any

savings on account of selecting a lower-cost insurer would benefit the Plan by spending fewer Plan assets. In short, Plaintiffs' self-dealing allegations strain credulity.

Finally, even if Athene were a service provider such that Section 1106 applies, the transactions here would fall into one of Section 1106's express exemptions—those codified at 29 U.S.C. § 1108. Section 1108(b)(2) provides an exemption for a transaction with a service provider if there is "reasonable arrangement" with "no more than reasonable compensation." 29 U.S.C. § 1108(b)(2). And Section 1108(b)(17) exempts transactions when the plan pays no more than "adequate consideration," which, for a security for which there is not a generally recognized market, is "the fair market value of the asset as determined in good faith by a fiduciary." 29 U.S.C. § 1108(b)(17); *see Cunningham*, 86 F.4th at 975 ("[T]o plead a violation of § 1106(a)(1)(C), a complaint must plausibly allege that a fiduciary has caused the plan to engage in a transaction that constitutes the 'furnishing of services between the plan and a party in interest' *where that transaction was unnecessary or involved unreasonable compensation*." (quoting 29 U.S.C. § 1106(a)(1)(C)) (alterations adopted) (emphasis in original)).

Similarly, DOL has issued Prohibited Transaction Exemption 84-24, which carved out transactions involving the "[t]he purchase, with plan assets, of an insurance or annuity contract from an insurance company" where "no more than reasonable compensation is paid." 71 Fed. Reg. 5887, 5889 (Feb. 3, 2006).[8] In other words, if a transaction involves reasonable compensation or if the plan pays no more than fair market value for an asset, there is no violation of Section 1106. Here, Plaintiffs allege that Athene was, in fact, the lowest-cost annuity provider. Compl. ¶ 105 ("Defendants' search was biased in favor of the lowest-cost provider"). And they do not include

---

[8] Under Section 1108(a), DOL has express statutory authority to grant additional exemptions to "any fiduciary or transaction, or class of fiduciaries or transactions, from all or part of the restrictions imposed by sections 1106 and 1107(a)." 29 U.S.C. § 1108(a).

any allegations that Fiduciary Counselors negotiated the contracts in bad faith. Accordingly, even if Plaintiffs had sufficiently alleged that a transaction with a service provider occurred, the transaction would be exempt and not a violation of ERISA; Plaintiffs' prohibited transaction claim therefore fails as a matter of law.

### C.    Plaintiffs' Failure To Monitor Claim Fails (Count IV).

Plaintiffs' last claim argues that the Alcoa Defendants breached their fiduciary duty to monitor the conduct of Fiduciary Counselors. This claim fares no better than the others.

As an initial matter, the failure to monitor claim fails because Plaintiffs "cannot maintain a claim for breach of the duty to monitor absent an underlying breach of the duties imposed under ERISA" by the other fiduciaries. *Rinehart v. Lehman Bros. Holdings, Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (citation omitted); *see also Matney*, 80 F.4th at 1159 n.21 (collecting cases). Because Plaintiffs have failed to allege that Fiduciary Counselors breached any of its fiduciary duties, *see supra* at 29, 31–35, their claim that the Alcoa Defendants did not monitor Fiduciary Counselors also fails.

Even if Plaintiffs adequately alleged that Fiduciary Counselors breached its fiduciary duties, their failure to monitor claim still fails because the Complaint contains no plausible allegations that the Committee (or any other Alcoa Defendant) breached any fiduciary duty to monitor Fiduciary Counselors' activities. "The duty to monitor does not carry with it the duty to review [a] … fiduciary's every decision," because "to find otherwise would defeat the purpose of hiring … fiduciaries to run a benefit plan in the first place." *Scalia v. WPN Corp.*, 417 F. Supp. 3d 658, 671 (W.D. Pa. 2019); *see Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996) ("the responsibility to monitor appointees" is not intended to "expose[] the appointing fiduciary to open-ended liability"). Instead, "a fiduciary's obligation to act is triggered when it has notice of the appointee's misconduct or has information available to it from which the

misconduct would be apparent." *Id.* The appointing fiduciary "is not exposed to liability unless something 'put them on notice of possible misadventure by their appointees." *Id.* (quoting *Coyne*, 98 F.3d at 1466 n.10).

Here, Plaintiffs' claim is based on their conclusory assertion that the Alcoa Defendants did not "ensure that the process of selecting Athene as an annuity provider complied with the fiduciary standards set forth in 29 U.S.C. § 1104(a)(1)(A) and (B), and Interpretive Bulletin 95-1." Compl. ¶ 127. But as previously explained, Plaintiffs have not included *any* factual allegations about the *process* Fiduciary Counselors used to select Athene—let alone that the Alcoa Defendants did not monitor that process. For example, Plaintiffs do not allege any facts that would have placed the Alcoa Defendants on notice that Fiduciary Counselors may have breached its fiduciary duties. Instead, the Complaint jumps from the appointment of Fiduciary Counselors straight to the PRT transactions with Athene. Compl. ¶¶ 80–81. That is insufficient as a matter of law. *See Nicolas v. The Trustees of Princeton Univ.*, 2017 WL 4455897, at *5 (D.N.J. 2017) (dismissing monitoring claims because the plaintiff's monitoring claim "reads like legal conclusions as opposed to factual allegations; Plaintiff does not allege facts about Defendant's actual monitoring process and its specific shortcomings"); *Carter v. San Pasqual Fiduciary Tr. Co.*, 2016 WL 6803768, at *5 (C.D. Cal. Apr. 18, 2016) (dismissing claims because "Plaintiffs allege no facts regarding whether, when, and to what extent Defendants monitored either the … Trust or other Defendants"); *Neil v. Zell*, 677 F. Supp. 2d 1010, 1023–24 (N.D. Ill. 2009) ("Plaintiffs allege only in the most general terms that [the Board] breached their duty to monitor [the trustee] … Without more, Plaintiffs' allegations that the Board breached its duty to monitor … fails *Twombly*'s plausibility requirement.").

### III.    ERISA Limits the Scope of Plaintiffs' Relief.

While Plaintiffs bring claims under 29 U.S.C. §§ 1132(a)(2), (3), and (9), Compl. ¶ 6, subsections (2) and (3) grant statutory standing only to *current* participants of a plan. But by their own admission, Plaintiffs are all *former* participants of Alcoa's plans, and therefore can only bring suit under § 1132(a)(9). *See* Compl. ¶¶ 13–16.

This distinction matters because Section 1132(a)(9) limits Plaintiffs' recovery to appropriate relief … to assure receipt by the participant or beneficiary *of the amounts provided or to be provided* by such insurance contract or annuity …." 29 U.S.C. § 1132(a)(9) (emphasis added). In other words, as former members of the plans, Plaintiffs may recover only the benefits they were entitled to receive; they are not entitled to amorphous relief such as "disgorgement" of so-called "ill-gotten profits/cost savings." Compl. ¶ 122; *see Lewis v. Pension Benefit Guar. Corp.*, 912 F.3d 605, 611 (D.C. Cir. 2018) (noting that disgorgement may be available relief under Section 1132(a)(3)). Indeed, "[w]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974). Here, Congress has determined that former plan members may bring suit under Section 1132(a)(9) to ensure their benefits are secure, but it has not permitted former plan members to sue under Sections 1132(a)(2) and (3). *See Dupree v. Prudential Ins. Co. of Am.*, 2007 WL 2263892, at *31 (S.D. Fla. 2007) (after purchase of annuity contract, former participants are not treated as participants for purposes of bringing claims under 29 U.S.C. § 1132(a)). The Court should therefore dismiss their claims to the extent they are brought under Sections 1132(a)(2) and (3).

### CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint.

Dated: June 12, 2024                        Respectfully submitted,

                                            /s/ Christian J. Pistilli
                                            ─────────────────────────────
                                            Christian J. Pistilli (D.C. Bar 496157)
                                            Robert Newman (D.C. Bar 457976)
                                            Laura Flahive Wu (D.C. Bar 1024612)
                                            Nicholas O. Pastan (D.C. Bar 240966)
                                            COVINGTON & BURLING LLP
                                            850 Tenth Street NW
                                            Washington, DC 20001
                                            Telephone: (202) 662-6000
                                            cpistilli@cov.com

                                            Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system on June 12, 2024.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

COVINGTON & BURLING LLP

*/s/ Christian J. Pistilli*
Christian J. Pistilli

*Counsel for Defendants*

43