UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTHA BRENNAN CAMIRE, *et al.*,

*Plaintiffs*,

v.

ALCOA USA CORP., *et al.*,

*Defendants*.

Civil Action No. 24-1062 (LLA)

**MEMORANDUM OPINION**

Plaintiffs Martha Brennan Camire, Craig Jefferson, David Lyn Shepherd, and Daniel Schipper bring this suit, individually and on behalf of others similarly situated, against Alcoa USA Corporation ("Alcoa USA"), Alcoa Corporation ("Alcoa"), the Alcoa Benefits Management Committee ("Benefits Committee"), William F. Oplinger, John Does 1-5, and Fiduciary Counselors, Inc. ("Fiduciary Counselors") (collectively, "Defendants"), for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, arising out of their alleged mismanagement of Alcoa retirees' defined-benefit pension plans. ECF No. 28. Before the court are Defendants' motion to dismiss, ECF No. 36, motion to file under seal, ECF No. 34, and motion to file partially under seal, ECF No. 35. The motions are fully briefed. ECF Nos. 34 to 40. For the reasons explained below, the court will grant the motion to dismiss and deny as moot the motions to file under seal and partially under seal.

**I.   FACTUAL BACKGROUND PROCEDURAL HISTORY**

The court accepts the following factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs are former employees of Alcoa who are participants in its pension plans,

including the Pension Plan for Certain Hourly Employees of Alcoa, the Pension Plan for Certain Salaried Employees of Alcoa USA Corporation, and the Alcoa Subsidiaries Merged Inactive Plan. ECF No. 28 ¶¶ 9, 12-15. Defendants are Alcoa Corporation, "a publicly traded aluminum producer headquartered in Pittsburgh, Pennsylvania," *id.* ¶ 16; Alcoa USA Corporation, a subsidiary of Alcoa Corporation, *id.* ¶ 17; the Alcoa Corporation Benefits Management Committee, which is a "group of individuals appointed by Alcoa's Board of Directors to oversee the operation of" Alcoa's pension plans, *id.* ¶ 18; William F. Oplinger, the President and Chief Executive Officer of Alcoa, *id.* ¶ 19; Fiduciary Counselors, Inc., which is "a privately held investment consulting firm that acts as an independent fiduciary for pension fund assets," *id.* ¶ 20; and John Does 1-5, who are "unknown members of the Benefits Committee who exercised discretionary authority or discretionary control" over various aspects of the pension plans, *id.* ¶ 21.

Plaintiffs are participants in defined-benefit pension plans, under which they receive a fixed amount every month, regardless of the value of their plan or any management decisions. *Id.* ¶¶ 1, 10, 26-28.[1] A defined-benefit plan places the risk of failure on the employer, rather than on plan participants: "[i]n the event that plan assets are inadequate to satisfy liabilities for benefit payments, the employer has an obligation to make additional contributions to the plan to meet ERISA's funding requirements." *Id.* ¶ 28. Because the risk of plan failure falls on employers, they sometimes attempt to mitigate their exposure through pension risk transfer ("PRT") transactions, in which "an employer offloads all or part of its pension benefit obligations by purchasing [group annuity contracts] with plan assets from an insurer, who then assumes the

---

[1] "In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions. By contrast, in a defined-contribution plan, such as a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020).

responsibility of future benefit payments to employees and retirees covered by the transaction." *Id.* ¶ 29. PRT transactions can either be: "(1) total buyouts, in which the plan sponsor or employer terminates the plan and transfers all of the pension obligations to an insurer through purchase of an annuity contract; or (2) partial buyouts, in which plan sponsors purchase an annuity from an insurance company to satisfy benefit payments to a select group of participants." *Id.* ¶ 31. At issue here are PRT transactions related to partial buyouts of the Alcoa entities' pension obligations by Athene Annuity and Life Co. and Athene Annuity & Life Assurance Company of New York (collectively "Athene"), *id.*, "private equity-controlled insurance companies with a highly risky offshore structure," *id.* ¶ 3.

When pension benefit obligations are transferred through a PRT transaction, the plan participants lose their protections under ERISA. *Id.* ¶ 32. ERISA is a federal statute that "protect[s] the retirement security of plan participants and their beneficiaries . . . by imposing on plan fiduciaries strict standards of conduct derived from the common law of trusts, most notably a duty of loyalty and a duty of prudence." *Id.* ¶ 23. ERISA also guarantees the pension funds of qualifying plan participants through the Pension Benefit Guaranty Corporation ("PBGC"), which protects pensioners in the event of a plan's failure. *Id.* ¶ 32. After a PRT transaction, a plan participant's pension is protected only by a state guaranty association ("SGA"), which "offer[s] less protection compared to the PBGC" because it is not pre-funded and only provides coverage up to limits set by state law—which, in many states, is $250,000 in the present value of annuity benefits. *Id.* ¶ 34.

In interpretive guidance, the U.S. Department of Labor has instructed that when plan fiduciaries—which include plan trustees, plan administrators, and members of a plan's investment

committee[2]—select "an annuity provider in connection with a pension risk transfer . . . [they] generally must take steps calculated to obtain 'the safest annuity available.'" *Id.* ¶ 24 (quoting 29 C.F.R. § 2509.95-1). This requires plan fiduciaries to consider: "(1) the annuity provider's investment portfolio quality and diversification; (2) [t]he size of the insurer relative to the proposed contract; (3) [t]he level of the insurer's capital and surplus; (4) the insurer's exposure to liability; (5) the structure of the annuity contract and guarantees supporting it; and (6) the availability of additional protection through state guaranty associations." *Id.* ¶ 44 (quoting 29 C.F.R. § 2509.95-1) (internal quotation marks omitted).

Beginning in 2018, "Defendants transferred Alcoa's pension liabilities to Athene" via "a series of seven PRTs." *Id.* ¶ 80; *see id.* ¶ 82. "[B]etween August 2018 and August 2022, the Alcoa Defendants' PRTs affected nearly 30,000 Alcoa Plan participants, offloading approximately $2.79 billion of Alcoa's pension liabilities to Athene." *Id.* ¶ 83.

Plaintiffs allege that Defendants retained Athene as the annuity provider "in violation of their strict fiduciary responsibilities . . . [because] Athene was not the safest available option." *Id.* ¶ 84. Plaintiffs cite several factors that should have led plan fiduciaries to conclude that Athene was not the safest option, including: "Athene's complex investment structure"; its "focus on private equity"; its "questionable creditworthiness"; its "use of untrustworthy credit rating agencies"; its investment in "far riskier assets" compared to other annuity providers; and its "reinsurance of annuities with offshore affiliates." *Id.* ¶ 85. Plaintiffs accordingly allege that "[d]espite clear evidence that Athene was substantially riskier than traditional annuity providers, Defendants placed Alcoa retirees' and their beneficiaries' future retirement benefits at substantial

---

[2] *See* U.S. Dep't of Labor, *Fiduciary Responsibilities*, https://perma.cc/A9WX-GR9E. "The primary responsibility of fiduciaries is to run the plan solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits and paying plan expenses." *Id.*

4

risk of default" without compensating them for that additional risk.  *Id.* ¶ 87.  Upon Plaintiffs' information and belief, the Alcoa Defendants received an economic benefit as a result of the PRT transactions because they paid less to Athene in premium payments than they would have "paid to an established and reputable insurance provider."  *Id.* ¶ 90.

Plaintiffs also allege that the PRT transactions "immediately diminished the present value of Plaintiffs' and other Alcoa retirees' pension benefits [because] [t]he market for annuities sets the value for the same or similar future stream of payments issued by different annuity providers[, and i]f an annuitant receives the same payments, but from an issuer of lower creditworthiness, it is a loss for the annuitant."  *Id.* ¶ 93.  As a result, "Alcoa retirees' pension benefits transferred to Athene are worth far less than they would be worth if issued by a traditional insurer of high credit quality."  *Id.* ¶ 94.  Plaintiffs further assert that "the risk that [they] will not receive the benefits to which they are entitled is substantial."  *Id.* ¶ 96.

Plaintiffs filed this putative class action in April 2024 seeking declaratory, injunctive, and equitable relief, as well as disgorgement.  ECF No. 28, at 44.  In August, Defendants filed a motion to dismiss, as well as motions to file supporting exhibits under seal and partially under seal.  The motions are fully briefed and are ripe for resolution.  ECF Nos. 34 to 40.

## II. LEGAL STANDARD

Because Article III of the Constitution limits the jurisdiction of federal courts to "'actual cases or controversies' . . . plaintiffs 'must establish that they have standing to sue.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (first quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); then quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  To do so, they must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a

5

likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). In reviewing a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Co.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

### III.   DISCUSSION

Principally relying on *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020), Defendants argue that Plaintiffs lack standing to bring their claims because they have not sufficiently alleged an injury in fact. ECF No. 36-1, at 12-25.[3] Plaintiffs respond that they have sufficiently alleged both an actual injury, ECF No. 39, at 9-20, and a concrete risk of future injury due to a substantial risk of loss to their benefits, *id.* at 22-30. The court agrees with Defendants and will dismiss the case.

#### A.   Actual Harm

Plaintiffs raise three arguments in support of their claim that they have suffered actual harm as a result of the transfer of their pensions to Athene: (1) that the value of their benefits has been "degraded" as a result of the transfer, *id.* at 12; (2) that they suffered a harm when Defendants failed to "purchase the annuity that would 'best promote[]' [their] interests," *id*. at 11 (first alteration in original) (quoting *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 302 (5th Cir. 2000));

---

[3] Defendants also allege that Plaintiffs fail to state claims under ERISA on which relief can be granted, ECF No. 36-1, at 25-44, but the court need not consider that argument in light of its determination that Plaintiffs lack standing.

and (3) that "Defendants' misuse of plan assets harmed the concrete interests that ERISA protects," ECF No. 39, at 16, thereby entitling them to equitable relief.  Defendants respond that each of these arguments is foreclosed by *Thole*.  *See* ECF No. 40, at 2.  The court agrees.

### 1. Degradation of the value of Plaintiffs' benefits

Defendants argue that Plaintiffs "do not allege that they are currently suffering any monetary harm" because they have not claimed "that they are missing any payments or that they have received even one penny less than what they were entitled to under the Alcoa pension plans." ECF No. 36-1, at 14.  Plaintiffs counter that "financial injuries are not limited to out-of-pocket losses," and they contend that the PRT "transactions at issue have caused the value of Plaintiffs' benefits to be significantly degraded relative to the same monthly benefit through an annuity from a traditional insurer."  ECF No. 39, at 12-13.  Plaintiffs explain that even though a risk of plan failure "has not yet materialized," the "exposure to risk [that resulted from the PRT transactions] reduce[d] the value of Plaintiffs' assets," which establishes an injury in fact. *Id.* at 13.  Defendants reply that this kind of harm "cannot be squared with [the Supreme Court's decision in] *Thole*, which "makes clear that Plaintiffs' only cognizable interest is in receiving their monthly benefits," which have been "unaffected by the PRTs—and will remain unaffected 'regardless of how well or poorly' Athene's assets are managed."  ECF No. 40, at 3 (quoting *Thole*, 590 U.S. at 543).  The court agrees that *Thole* forecloses this theory of harm.

In *Thole*, the plaintiffs were participants in a defined-benefit plan who alleged "that the defendants violated ERISA's duties of loyalty and prudence by poorly investing the assets of the plan" and causing it to lose nearly $750 million.  590 U.S. at 541.  However, because the plan was a defined-benefit plan, the *Thole* plaintiffs continued to receive the monthly payments to which they were entitled "regardless of the plan's value at any one moment and regardless of the

7

investment decisions of the plan's fiduciaries." *Id.* at 540. The Supreme Court held that the plaintiffs had "no concrete stake in the lawsuit" because—regardless of whether they won or lost their suit—"they would still receive the exact same monthly benefits that they [were] already slated to receive." *Id.* at 541-42. In other words, even where participants in a defined-benefit plan could show that the overall value of their plan had suffered a significant loss, that fact was insufficient to confer standing on plan participants whose monthly payments had not been affected.

Like the plaintiffs in *Thole*, Plaintiffs in the instant case are participants in a defined-benefit plan and their monthly payments have not been affected by the action they seek to challenge here—the PRT transactions with Athene. ECF No. 36-1, at 14. Tellingly, not a single Plaintiff alleges that he or she has received a lower benefit payment than before the PRT transactions. *See id.*; *see generally* ECF No. 28. Thus, even if Plaintiffs could demonstrate a failure on the part of their fiduciaries, they have not suffered an actual harm that would confer standing. That is because, like the plaintiffs in *Thole*, they will "still receive the exact same monthly benefits that they [were] already slated to receive" whether they win or lose this case. 590 U.S. at 541.[4]

Plaintiffs point to principles of contract law in an attempt to establish that they suffered a harm to their contractual rights when their pensions were transferred to Athene without their consent, ECF No. 39, at 12-13, arguing that "[r]eal-world examples and case law support the conclusion that exposure to enhanced risk and devaluation of contract rights are concrete injuries-in-fact." *Id.* at 13. The court agrees with Defendants that none of the cases Plaintiffs cites "stand[s] for the proposition that a party to a contract suffers an injury simply because the contract is assigned to a different entity with a different risk profile." ECF No. 40, at 4; *see Rock Springs*

---

[4] Unlike the plaintiffs in *Thole*, Plaintiffs in this case do not allege a concrete or measurable reduction in the overall value of their plan based on poor investing decisions, but rather a theoretical reduction in value based on a riskier annuity provider. *See* ECF No. 28, at 32-33.

8

*Plaza II, Inc. v. Investors Warranty of Am., LLC*, 618 F. Supp. 3d 262, 272 (D. Md. 2022); *U.S. Shoe Corp. v. Hackett*, 793 F.2d 161, 162-63 (7th Cir. 1986).  The principles of Article III standing apply with equal force to claims arising out of contract law.  Plaintiffs cannot escape the requirement to show that they have suffered an actual harm by framing their claim as a violation of contractual rights; they must still show that the transfer of their contractual rights *concretely* harmed them in some way.  And because Plaintiffs continue to receive their monthly benefit payments, they cannot clear this bar.[5]

       Finally, Plaintiffs argue that, because ERISA requires that suit be brought within six years after "the date of the last action which constituted a part of the breach or violation," 29 U.S.C. § 1113(1)(A), if "Athene defaults six years and a day after the last PRT, Plaintiffs' only judicial remedy would be against an insolvent party, while Defendants would be immunized," ECF No. 39, at 15.  In Plaintiffs' view, the need to avoid such a clearly unjust outcome militates in favor of allowing this suit to continue.  *See id.*  This argument is hardly convincing.  Section 1113(1)(A) is "a statute of repose, which 'effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time.'"  *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 180 (2020) (alteration in original) (quoting *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.,* 582 U.S. 497, 505 (2017)).  It may be frustrating to Plaintiffs if they are unable to demonstrate a concrete harm within the six-year limitations period, yet one materializes after six years and a day.  But that does not entitle them to bring suit before they have experienced a harm that meets the requirements of Article III.  This is especially so because if Athene fails after the limitations period, Plaintiffs would still be able to bring claims against Athene, even if they are

---

[5] The court considers below Plaintiffs' argument that a substantially increased risk of plan failure suffices to establish standing.  *See infra* Part III.B.  Here, it determines only that the alleged violations of contractual rights that Plaintiffs describe do not amount to actual harm.

no longer able to bring them against the Alcoa Defendants. In this way, an option for recourse remains available to Plaintiffs should an actual harm arise. *See* ECF No. 40, at 5. But until such a harm becomes evident, the court will not set aside the requirements of standing, because "[t]here is no ERISA exception to Article III." *Thole*, 590 U.S. at 547.

### 2. Failure to "best promote" Plaintiffs' interests

Plaintiffs additionally argue that they suffered an actual harm because "[t]he lost opportunity to purchase a desired product is a cognizable injury." ECF No. 39, at 11 (quoting *Orangeburg v. Fed. Energy Regul. Comm'n*, 862 F.3d 1071, 1078 (D.C. Cir. 2017)). They further explain that "Defendants had a legal duty to act on Plaintiffs' behalf to purchase the annuity that would 'best promote[]' Plaintiffs' interests," and their "interests would have been best promoted by obtaining the safest available annuity product from a traditional life insurer." *Id.* (alteration in original) (quoting *Bussian*, 223 F.3d at 302). In Plaintiffs' view, Defendants' decision to "select[] Athene, a high-risk annuity provider offering an inferior annuity product, caused Plaintiffs to lose the opportunity to have the safest available annuity product purchased on their behalf," which is "a cognizable injury" sufficient to establish standing. *Id*. Defendants respond that ERISA does not "entitle[] [plan participants] to select their own insurer" and that, in any event, the *Thole* Court rejected the notion that "a breach of fiduciary duty alone can support standing." ECF No. 40, at 9. The court once again agrees with Defendants' reading of *Thole* and finds that, in the absence of actual financial harm, Plaintiffs' alleged fiduciary breach is insufficient to confer standing.

Plaintiffs cite no provision of ERISA that confers on them the ability to choose their insurer, and to the extent that Plaintiffs argue that they have been harmed by the selection of a less secure annuity provider, they have not alleged any facts to show that any harm has materialized because of that selection. *See supra* Part III.A.1. As mentioned, because Plaintiffs are members

of a defined-benefit plan, their "benefits are fixed and will not change, regardless of how well or poorly the plan is managed[,] . . . [because they] are not tied to the value of the plan." *Thole*, 590 U.S. at 543. Whether Plaintiffs' plan is managed by Alcoa, Athene, or one of the annuity providers that Plaintiffs prefer, the payments to Plaintiffs remain exactly the same. And because Plaintiffs have continued to receive their benefit payments, they have not suffered actual harm as a result of Alcoa's PRT transactions with Athene.

### 3.      Equitable claims

Plaintiffs contend that because "a financial loss [is] not a prerequisite for [Article III] standing to bring a disgorgement claim under ERISA," and because "[a] financial injury is also 'unnecessary to establish standing for . . . declaratory and injunctive relief," they need not show a concrete financial harm in order to bring their equitable claims. ECF No. 39, at 15-16 (first and second alterations in original) (quoting *Peters v. Aetna, Inc.*, 2 F.4th 199, 219-20 (4th Cir. 2021)). Defendants question whether Plaintiffs have properly stated a claim for equitable relief, ECF No. 40, at 6, but argue that, in any event, equitable claims brought under ERISA are still subject to the requirements of Article III, *id.* at 6-7. Again, the court agrees with Defendants that claims for equitable relief under ERISA are still subject to the ordinary requirements of standing.

Once again, the *Thole* Court's reminder that "[t]here is no ERISA exception to Article III" is instructive. 590 U.S. at 547. In *Thole*, the plaintiffs sought restoration of plan losses and other equitable relief. *Id.* at 544. But the equitable nature of that relief did not change the Court's assessment that the plaintiffs had not "plausibly and clearly allege[d] a concrete injury" because they had not suffered any monetary loss. *Id.* So too here. While it may be true that financial injury is not *specifically* required to create standing for disgorgement, injunctive, and declaratory relief in ERISA cases, *see Peters*, 2 F.4th at 219-21, that does not mean that Plaintiffs

automatically have standing where they have alleged no actual injury at all. Plaintiffs fail to point to *any* injury—financial or otherwise—and this dooms their equitable claims as well.[6]

### B. Risk of Harm

Apart from their arguments that they have already suffered actual harm, Plaintiffs assert standing based on a substantial risk of future injury. ECF No. 39, at 23-30. Defendants respond that Plaintiffs have "fail[ed] to allege any facts suggesting that Athene is at imminent risk of becoming insolvent and that any injury to Plaintiffs is 'certainly impending.'" ECF No. 40, at 10 (quoting *Clapper*, 568 U.S. at 409). The court concludes that, while this argument is not foreclosed by *Thole*, Plaintiffs have failed to sufficiently allege a concrete, impending injury.

In *Thole*, the Supreme Court noted that the plaintiffs had not advanced an argument that "plan participants in a defined-benefit plan have standing to sue if the mismanagement of the plan was so egregious that it substantially increased the risk that the plan and the employer would fail and be unable to pay the participants' future pension benefits," 590 U.S. at 546—an argument that Plaintiffs do raise here. The Court noted in dicta, however, that even if such an argument had been preserved, the plaintiffs "did not plausibly and clearly claim that the alleged mismanagement of the plan substantially increased the risk that the plan and the employer would fail and be unable to pay the plaintiffs' future pension benefits," because "a bare allegation of plan underfunding does

---

[6] This is true even where equitable relief is provided for by statute. Plaintiffs argue that they have statutory standing under 29 U.S.C. § 1132(a)(2) and (3), and that this suffices for them to seek equitable relief. ECF No. 39, at 44-45. However, a statutory "cause of action does not affect the Article III standing analysis" and the "[Supreme] Court has rejected the argument that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Thole*, 590 U.S. at 544 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). This is because "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. Because the court determines that Plaintiffs have not alleged a concrete injury that is sufficient to establish Article III standing, it need not consider Plaintiffs' argument about statutory standing.

not itself demonstrate a *substantially increased risk* that the plan and the employer would both fail." *Id.* (emphasis added). The Court also noted that, because the PBGC "covers the vested pension benefits up to a certain amount and often in full" in the event of a plan failure, an "increased-risk-of-harm theory of standing . . . might not be available for plan participants whose benefits are guaranteed in full by the PBGC." *Id.* at 546 n.2.

There are some salient differences between *Thole* and the instant case for the purposes of considering an increased-risk-of-harm theory of standing. First, in *Thole*, there was no PRT transaction, meaning that the plaintiffs continued to be protected by ERISA. *See id.* at 542. Thus, if the plaintiffs' plan later failed, their employer was still on the hook to pay their benefits, and if both the plan and the employer failed, the PBGC would pay out the lost funds because the plan remained covered by ERISA. In contrast, in the present case, when Alcoa transferred its obligations to Athene, Athene assumed the responsibility for those benefits in full, such that even if Athene fails, Alcoa has no obligation to pay anything. ECF No. 28 ¶ 29; ECF No. 36-1, at 7. Additionally, Plaintiffs' pension plans are no longer backed by the PBGC because of Alcoa's decision to transfer the plans to Athene, which caused Plaintiffs to lose ERISA protections. ECF No. 28 ¶ 96. Instead, Plaintiffs' pensions are now protected by SGAs, which, as explained, are more limited in the scope of their coverage than the PBGC. *Id.* ¶ 34; *see supra* p.3.

These differences affect the court's analysis in two material ways. First, because Alcoa is not responsible for Plaintiffs' pensions in the event that Athene fails, Plaintiffs need only "plausibly and clearly claim," *Thole*, 590 U.S. at 546, that switching to Athene substantially increased the risk of *plan* failure—as opposed both plan *and* employer failure. In other words, Plaintiffs do not need to allege a substantial risk of employer failure because employer failure is irrelevant here. Second, to the extent that the Supreme Court's dicta in *Thole* was predicated on

13

the availability of the PBGC as a financial backstop, this is not a consideration in the present matter.  Plaintiffs convincingly distinguish between the complete coverage offered by the PBGC and the less robust coverage offered by SGAs in the event of a plan failure.  *See* ECF No. 28 ¶¶ 32-34.  With these important caveats in mind, the court considers whether Plaintiffs have sufficiently alleged a risk of plan failure in the future.

Courts in this Circuit have "frequently upheld claims of standing based on allegations of a 'substantial risk' of future injury."  *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017) (collecting cases).  "[T]he proper way to analyze an increased-risk-of-harm claim is to consider the ultimate alleged harm"—here, plan failure—"as the concrete and particularized injury and then to determine whether the increased risk of such harm makes injury to an individual citizen sufficiently 'imminent' for standing purposes."  *Id.* (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 915 (D.C. Cir. 2015)).  To establish a sufficiently increased risk of harm, the plaintiff must allege "*both* (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account."  *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007).  However, courts must remain mindful "that the constitutional requirement of imminence . . . necessarily compels a very strict understanding of what increases in risk and overall risk levels can count as substantial."  *Elec. Priv. Info. Ctr. v. Fed. Aviation Admin.*, 892 F.3d 1249, 1255 (D.C. Cir. 2018) (quoting *Pub. Citizen, Inc.*, 489 F.3d at 1296).

Plaintiffs fail to make the necessary allegations to show an imminent risk of harm.  At a high level, the allegations in the complaint are comparative—focusing on why Athene is riskier than other annuity providers, ECF No. 28 ¶¶ 51-79—rather than absolute.  Plaintiffs do not allege that Athene is at a *high* risk of failure—just that it is at a *higher* risk of failure than other annuity

providers. While these allegations, accepted as true, may suffice to establish "a *substantially* increased risk of harm," they fail to show "a *substantial* probability of harm with that increase taken into account." *Pub. Citizen, Inc.*, 489 F.3d at 1295.[7] Put simply, because Plaintiffs never allege that Athene is substantially likely to fail—just that it is at a greater risk of failure than its competitors—they have failed to establish standing on the basis of an increased risk of harm.

Moreover, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 565 n.2). "[T]he requirement that threatened injury must be certainly impending" is not satisfied by a "theory of standing[] which relies on a highly attenuated chain of possibilities[]." *Id.* at 410. Here, there are several events that would need to take place before Plaintiffs could ever experience the harm they are concerned about. First, Athene would need to fail, which means that it would have to (1) "suffer[] catastrophic losses;" (2) "fail[] to sufficiently mitigate any such losses to preserve Plaintiffs' benefits;" and (3) fail "to secure alternative funding sources." ECF No. 36-1, at 22. Then, Plaintiffs would need to have benefits that actually exceed the amount that their SGAs cover, which is over $250,000 in most states. *Id.*[8] Finally, Athene's

---

[7] Plaintiffs offer the declaration of Thomas D. Gober, ECF No. 39-1, to support their contentions regarding the riskiness of Athene compared to other annuity providers. The court may consider declarations that serve to resolve factual disputes that are necessary to determine a court's jurisdiction. *See Ferrer v. CareFirst, Inc.*, 265 F. Supp. 3d 50, 52 (D.D.C. 2017). However, it does not seem that a factual dispute pertaining to jurisdiction is present here. Defendants explain that they "do not make a factual challenge to the [c]ourt's jurisdiction." ECF No. 40, at 11 n.3. And Plaintiffs' barrier to standing is not a lack of factual support for their position, but a failure to make the necessary allegation that there is a substantial probability that Athene will fail. *See generally* Part III.B; ECF No. 28. The court therefore declines to consider the declaration of Thomas D. Gober, ECF No. 39-1.

[8] Plaintiffs have not made any allegations regarding the total value of their benefits, such that the court cannot determine whether the SGA is likely to cover them in their entirety in the event of Athene's failure. *See generally* ECF No. 28.

accounts would need to be underfunded or insufficient to cover participants' losses in the event of failure. *Id.* at 22-23. Because Plaintiffs' allegations do not plausibly suggest that this "highly attenuated chain of possibilities" is likely, *Clapper*, 568 U.S. at 410, the court cannot conclude that any harm to Plaintiffs is "certainly impending," *id.*

* * *

In light of the court's decision to dismiss Plaintiffs' complaint for lack of standing, the court will deny as moot Defendants' motion to file under seal, ECF No. 34, and motion to file partially under seal, ECF No. 35, because the documents have no bearing on Plaintiffs' standing.[9]

## IV. CONCLUSION

For the foregoing reasons, the court will grant Defendants' motion to dismiss, ECF No. 36, and deny as moot Defendants' motion to file under seal, ECF No. 34, and motion to file partially under seal, ECF No. 35. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date: March 28, 2025

---

[9] ECF No. 34 shall remain under seal.