**UNITED STATES DISTRICT COURT**
**DISTRICT OF DISTRICT OF COLUMBIA**

MARTHA BRENNAN CAMIRE, et al.,

Plaintiffs,

v.

ALCOA USA CORP., et al.,

Defendants.

No. 1:24-cv-01062-LLA

**MEMORANDUM IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT AND FOR LEAVE TO FILE AMENDED COMPLAINT**

**CONTENTS**

Authorities ..... ii
Introduction ..... 1
Background ..... 2
A. Procedural Background ..... 2
B. The Proposed Amendments ..... 4
Argument ..... 5
I. The judgment should be altered or amended to allow Plaintiffs to seek leave to file the proposed Second Amended Complaint. ..... 5
II. Plaintiffs' amended pleading establishes standing and is otherwise appropriate. ..... 6
A. The proposed amendments establish Plaintiffs' standing. ..... 7
B. There is no other basis to deny leave to amend. ..... 10
Conclusion ..... 11
Certificate of Service ..... 12

## AUTHORITIES

### Cases

*Am. Nat'l Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) .......... 7

*Attias v. CareFirst, Inc.*,
865 F.3d 620, 622 (D.C. Cir. 2017) .......... 7, 9

*Brink v. Cont'l Ins. Co.*,
787 F.3d 1120 (D.C. Cir. 2015) .......... 1, 5, 6

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) .......... 6, 10

*Foman v. Davis*,
371 U.S. 178, 182 (1962) .......... 1, 2, 6

*Gillett v. Zara USA, Inc.*,
2022 U.S. Dist. LEXIS 143434/ (S.D.N.Y. Aug. 10, 2022) .......... 8

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*,
501 F. Supp. 2d 34 (D.D.C. 2007) .......... 8

*Konya v. Lockheed Martin Corp.*,
No. 24-750-BAH, 2025 U.S. Dist. LEXIS 59630 (D. Md. Mar. 28, 2025) .......... 10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) .......... 10

*Miss. Ass'n of Coops. v. Farmers Home Admin.*,
139 F.R.D. 542 (D.D.C. 1991) .......... 11

*NB v. District of Columbia*,
682 F.3d 77 (D.C. Cir. 2012) .......... 7

*Ontaio Forest Inds. Ass'n v. United States,*
444 F. Supp. 2d 1309 (Ct. Int;l Trade 2006) .......... 8

*Palacios v. MedStar Health, Inc.*,
298 F. Supp. 3d 87 (D.D.C. 2018) .......... 11

*Pub. Citizen, Inc. v. NHTSA*,
489 F.3d 1279 (D. C. Cir. 2007) .......... 3, 7

*Sherrod v. McHugh*,
249 F. Supp. 3d 85 (D.D.C. 2017) .......... 11

*Singletary v. Howard Univ.*,
939 F.3d 287 (D.C. Cir. 2019) .......... 7

*Smith v. Cafe Asia*,
598 F. Supp. 2d 45 (D.D.C. 2009) .......... 11

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) .......... 2, 3

*Thomas v. Principi*,
394 F.3d 970 (D.C. Cir. 2005) ........................................ 7

*United States v. Hicks*,
283 F.3d 380 (D.C. Cir. 2002) ........................................ 5

**Rules**

Fed. R. Civ. P. 15(a)(1)(B) ........................................ 10

Fed. R. Civ. P. 15(a)(2) ........................................ 5, 6

Fed. R. Civ. P. 59(e) ........................................ 2

**Other**

6 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (2d ed. 1990) ............ 5

**INTRODUCTION**

The Court dismissed this case on March 28, finding that Plaintiffs had not adequately alleged that Defendants' conduct in transferring Plaintiffs' pensions to a high-risk annuity provider outside of the ERISA regime caused Plaintiffs any injury-in-fact under Article III. ECF Nos. 41–42. Although the Court dismissed the case "without prejudice," it did not grant Plaintiffs leave to amend, entering a "final judgment" and directing the Clerk of Court to terminate the case. ECF No. 42.

Plaintiffs now file "a Rule 59(e) motion to alter or amend [the] judgment combined with a Rule 15(a) motion requesting leave of court to amend their complaint," which both the Supreme Court and the D.C. Circuit have held is the appropriate vehicle. *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1128 (D.C. Cir. 2015); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The current motion does not challenge—or ask the Court to reconsider—the reasoning in its dismissal order or its conclusion that Plaintiffs failed to sufficiently allege facts supporting Article III standing. Rather, it asks this Court only to amend its judgment, so that Plaintiffs may be permitted another opportunity to allege standing. Such a motion "should be granted unless the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Brink*, 787 F.3d at 1128–29.

Here, the proposed amendment includes additional facts showing not just that Athene is far riskier than other annuity providers in the market, but also that Athene is substantially likely to fail, or at minimum, to be forced to interrupt its payments, causing a financial loss to Plaintiffs and the class. The amendments would address other shortfalls identified by this Court as well. Because these additional facts would cure the deficiencies cited by the Court, the amendment is plainly not futile.

This would be Plaintiffs' second amended pleading, and the first with guidance from the

Court's decision, and, it is filed within the 28-day period permitted by Fed. R. Civ. P. 59(e). Accordingly, none of the factors that might potentially justify denying leave to amend are present. *See Foman*, 371 U.S. at 182. For these reasons, and those explained further below, the Court should amend the judgment to grant Plaintiffs leave to file the proposed Second Amended Complaint.

## BACKGROUND

### A. Procedural Background

This is an action for violations of the Employee Retirement Income Security Act of 1974 (ERISA), arising from the partial termination of three defined-benefit pension plans sponsored by Alcoa Corporation. Am. Compl. ¶¶ 1–5 (ECF No. 28). In a series of transactions between August 2018 and August 2022, the Alcoa Defendants transferred $2.8 billion in pension obligations for roughly 30,000 participants by purchasing with Plan assets group annuities from a third party, Athene Annuity and Life Company and Athene Annuity & Life Assurance Company of New York (collectively "Athene"). *Id.* ¶¶ 3, 80–83.

Plaintiffs are four Alcoa retirees who participated in the Plans and had their pension payments transferred to Athene. *Id.* ¶¶ 12–15, 98. Plaintiffs allege that Defendants' selection of Athene for the annuitization violated fiduciary obligations under ERISA because Athene's annuities are far riskier than others in the market, and that Defendants selected Athene to save Alcoa money at the expense of Plaintiffs' retirement security. *Id.* ¶¶ 84–85, 87, 90, 101–32.

On March 28, 2025, the Court granted Defendants' motion to dismiss. ECF Nos. 41–42. The Court concluded that *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020), foreclosed each of Plaintiffs' three theories as to how they sustained actual harm resulting from the transfer of their pensions to Athene. ECF No. 41 at 6–12. First, the Court concluded that under *Thole*, the only cognizable interest of participants in a defined-benefit plan is in receiving their monthly benefit payments.

*Id*. at 7–8. Thus, Plaintiffs' allegation that Defendants reduced the value of Plaintiffs' benefits by transferring the pension obligation to a high-risk provider instead of a safe one did not establish actual harm. *Id.* at 7–9. Second, the Court concluded that Defendants' decision to select an inferior annuity instead of an ERISA-compliant annuity was insufficient to confer standing, "in the absence of actual financial harm." *Id*. at 10–11. Third, the Court concluded that *Thole* requires Plaintiffs to show financial harm or other injury even to pursue equitable relief such as disgorgement. *Id.* at 11–12.

The Court also rejected Plaintiffs' assertion of standing based on a substantial risk of *future* injury. *Id*. at 12–16. Although *Thole* did not foreclose—and expressly left available—such a showing, the Court nevertheless found that Plaintiffs "failed to sufficiently allege a concrete, impending injury." *Id*. at 12. While Plaintiffs alleged that Athene "is at a *higher* risk of failure than other providers," the Court concluded that Plaintiffs had not adequately alleged "that Athene is at a *high* risk of failure" or "substantially likely to fail." *Id.* at 14–15. Thus, Plaintiffs' allegations showed "a *substantially increased* risk of harm," but not "a *substantial probability* of harm with that increase taken into account." *Id*. at 15 (quoting *Pub. Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1295 (D. C. Cir. 2007) (additional emphasis added)). Although Plaintiffs sought to supplement their allegations of imminent injury with the analysis of Thomas D. Gober, a Certified Fraud Examiner with decades of experience investigating insurance companies, the Court declined to consider Mr. Gober's testimony. *Id.* at 15 n.7; *see* ECF No. 39-1 ("Gober Declaration"). The Court further noted that to establish standing, Plaintiffs would have to show that several events related to Athene's financial condition are likely to occur, and had failed to properly allege that their benefits would not be fully covered by their respective state guaranty association ("SGA"). *Id.* at 15–16 & n.8.

The Court dismissed the case without prejudice and entered final judgment. ECF No. 42. Plaintiffs now move under Rule 59(e) and Rule 15(a) to alter or amend the judgment and for leave to file the proposed Second Amended Complaint.

**B. The Proposed Amendments**

The proposed Second Amended Complaint ("PSAC"), attached in clean and "redline" formats, provides additional factual allegations sufficient to establish Plaintiffs' standing. The proposed amendments primarily address the Court's conclusion that Plaintiffs failed to adequately allege "that Athene is at a *high* risk of failure" or "substantially likely to fail." ECF No. 41 at 14–15. The PSAC includes numerous additional facts showing that Plaintiffs face a current "substantial probability" of financial harm due to Defendants' selection of Athene, and thus satisfy the Article III imminence standards articulated by the Court. This includes facts bearing on Athene's risk of failure that were previously analyzed in the excluded Gober Declaration. ECF No. 41 at 15 n.7. In addition, the PSAC contains factual allegations rebutting Defendants' assertion that an unlikely and attenuated chain of events would have to occur before Plaintiffs would suffer financial harm, as well as facts showing that Plaintiffs' benefits exceed the amount their SGAs would cover.

As Mr. Gober explained and the PSAC now alleges, Athene's practices and financial condition closely track those of multiple other insurance companies that failed in 2024. PSAC ¶¶ 83–93. Like those failed insurers, Athene has an inadequate surplus, rapid growth in liabilities, and prolific use of affiliated reinsurance. *Id.* ¶¶ 92–93. To wit: Athene has a surplus of only 1.4%, five times smaller than the national average of 7%; it has experienced a rapid growth in liabilities; and it relies heavily on its Bermuda-based captive reinsurers, which allow it to hold a large proportion of high-risk investments, such as collateralized loan obligations. *Id.* In addition, Athene's risk of failure has been exacerbated by a recent and dramatic rise in interest

rates. *Id.* ¶ 64. The strain of the current interest-rate environment on Athene's private equity model, which relies heavily on debt to finance acquisitions, is shown by the fact that nearly 25% of the companies owned by Athene's parent, Apollo Global Management, have defaulted since 2022. *Id.* In addition, even if Athene does not fail outright, its precarious financial position is highly likely to cause Plaintiffs to suffer *at least* an interruption of their benefits because of state regulatory intervention, and thus financial harm. *Id.* ¶¶ 9, 110–11.

Finally, the PSAC describes an actuarial valuation showing that the benefits owed to a named plaintiff exceed his SGA's payment cap, and alleges additional facts demonstrating that lost benefits are likely once Athene defaults. *Id.* ¶¶ 20–21.

## ARGUMENT

Even after the entry of judgment, the "liberal intent of Rule 15(a)(2)" continues to apply. *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1128 (D.C. Cir. 2015). "Courts 'should freely give leave' for a party to amend a pleading 'when justice so requires.'" *Id*. (quoting Fed. R. Civ. P. 15(a)(2)). Here, justice requires that leave to amend be granted because the proposed amendments establish Plaintiffs' standing. Therefore, allowing the amendment will further the purpose of Rule 15(a), which is "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002) (quoting 6 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1471, 505–06 (2d ed. 1990)). As the proceedings are at an early stage, Defendants will not be prejudiced by an amendment, nor is there any other factor that might justify denial of leave to amend.

### I. The judgment should be altered or amended to allow Plaintiffs to seek leave to file the proposed Second Amended Complaint.

After entry of final judgment, a plaintiff can amend its pleading only by filing "a [Rule]

59(e) motion to alter or amend a judgment combined with a Rule 15(a) motion requesting leave of court to amend their complaint." *Brink*, 787 F.3d at 1128 (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Denying a Rule 59(e) motion under these circumstances is an abuse of discretion "unless 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Id*. (quoting *Firestone*, 76 F.3d at 1209); *see also Foman v. Davis*, 371 U.S 178, 182 (1962) (holding that district court abused discretion by giving no reason to justify denying leave to amend after entry of judgment).

Here, although the Court found that Plaintiffs "fail[ed] to make the necessary allegations to show an imminent risk of harm," ECF No. 41 at 14, the Court did not find that Plaintiffs "could not possibly cure the deficiency" by alleging additional facts, *Brink*, 787 F.3d at 1128. To the contrary, the opinion signals that Plaintiffs could have sufficiently pleaded standing through additional allegations showing that Athene is substantially likely to fail and that SGAs would be unlikely to cover the entirety of Plaintiffs' benefits. *See, e.g.*, ECF No. 41 at 15 & n.8. Because "other facts consistent with" the Amended Complaint could establish Plaintiffs' standing, the Rule 59(e) motion should be granted.

Once the court vacates the judgment pursuant to Rule 59(e), "Rule 15(a)'s liberal standard for granting leave to amend governs." *Firestone*, 76 F.3d at 1208. As discussed next, Plaintiffs satisfy that liberal standard.

## II. Plaintiffs' amended pleading establishes standing and is otherwise appropriate.

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this liberal standard, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive … repeated failure to cure deficiencies by [previous] amendments … [or] futility of amendment.'" *Firestone*, 76 F.3d at 1208 (quoting *Foman*, 371 U.S. at 182).

Here, none of the factors that would possibly justify denial of leave to amend are present. The proposed amendment is hardly futile, as it includes additional facts establishing Plaintiffs' standing, which the Court previously found lacking. And Defendants cannot show undue prejudice or the like.

### A. The proposed amendments establish Plaintiffs' standing.

Leave to amend may be denied on futility grounds if the proposed amendment "would not withstand a motion to dismiss." *Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019). These amendments, by contrast, establish Plaintiffs' standing and thus would defeat a renewed Rule 12(b)(1) motion.

At the pleading stage, Plaintiffs bear only a "light burden" and face a "low bar to establish their standing." *Attias v. CareFirst, Inc.*, 865 F.3d 620, 622, 627 (D.C. Cir. 2017). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice." *NB v. District of Columbia*, 682 F.3d 77, 82 (D.C. Cir. 2012). A court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). And the court assumes "that plaintiffs will prevail on the merits of their claim." *Attias*, 865 F.3d at 629.

Going beyond the Amended Complaint's allegation of a substantial increase in risk, the PSAC alleges in detail that Plaintiffs have suffered at least five distinct injuries-in-fact for standing purposes. PSAC ¶¶ 7–15. Those injuries begin with "a *substantial* probability of harm with that increase [in risk] taken into account." ECF No. 41 at 15 (quoting *Pub. Citizen*, 489 F.3d at 1295 (emphasis in original)). The proposed amendments now show not only that Athene's annuities are far riskier than market alternatives, but that Athene is at a "*high* risk of failure" and

"substantially likely to fail" and cause financial losses to Plaintiffs and the class. *Id*. at 14–15.

The proposed amendments include numerous additional facts showing that Athene is at a high risk of failure. The substantial probability of Athene's failure is shown by the fact that nearly **25%** of companies owned by Athene's parent, Apollo Global Management, have defaulted since 2022. PSAC ¶ 64. Due to a dramatic increase in interest rates, private-equity firms defaulted at a 17% clip between January 2022 and August 2024. *Id.* A large proportion of Athene's holdings are highly risky, volatile, illiquid, or affiliated with Apollo. *Id.* ¶¶ 64–65, 73–75. Currently, approximately 20% of Athene's portfolio is invested in risky asset-backed securities and leveraged loans, and approximately 80% of its pension-risk transfer liabilities are reinsured through Bermuda-based affiliates owned by Athene's parent, Apollo. *Id.* ¶ 68. Athene's surplus-to-liabilities ratio, which is the only buffer between solvency and insolvency, is only 1.4%—lower than 99% of insurance companies—and is partly attributable to a massive 251% increase in Athene's liabilities from 2019–2023. *Id.* ¶¶ 69–72. Athene's investment in affiliated assets also multiplied in recent years, adding to the high risk of failure. *Id.* ¶ 73.

The combination of Athene's dramatically inadequate surplus relative to its liabilities; its dependence upon Apollo; its excessive use of affiliated investments; its escalating holdings of high-risk assets, and a rising interest rate environment establish a substantial probability that Athene will default or at least be forced to delay payments to annuitants. *Id.* ¶ 76. Such a delay has been consistently recognized as an Article III injury.[1] The substantial probability that Athene

[1] *See, e.g.*, *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 501 F. Supp. 2d 34, 43 (D.D.C. 2007) (recognizing that a delay in payment is an Article III injury because it "deprives Plaintiffs of the time-value of money") (quoting *Ontaio Forest Inds. Ass'n v. United States,* 444 F. Supp. 2d 1309, 1323–24 (Ct. Int;l Trade 2006)); *Gillett v. Zara USA, Inc.*, 2022 U.S. Dist. LEXIS 143434, at *16–17 (S.D.N.Y. Aug. 10, 2022) (concluding that the "temporary withholding of money to which Plaintiff was owed" was "a concrete, economic harm" sufficient for standing even though the "delay was only a week" and "the economic harm may amount to a

will default—or be forced to interrupt payments—has been enhanced by recent events, including a severe downturn in credit markets in 2025 and related factors which have had a negative impact on private equity. *Id.* ¶¶ 77–82.

That these factors place Athene at a high risk of default is corroborated by its similarities to other recently-failed insurers. *Id.* ¶¶ 83–93. Athene's surplus-to-liabilities ratio is actually *lower* than two recently failed insurers, and like those failed insurers, Athene engages in affiliated reinsurance at a rate that far exceeds its surplus. *Id.* ¶¶ 92–93.

And the amendments address other deficiencies identified by the Court as well. One is the lack of allegations "regarding the total value of" Plaintiffs' benefits, to determine whether state guaranty association funds (SGAs) would cover them. ECF 41 at 15 n.8. The PSAC now alleges that an actuarial valuation of named plaintiff Craig Jefferson's benefits shows that he would lose more than half the value of annuity payments upon an Athene collapse. PSAC ¶¶ 20–21. The other is the Court's identification of the "series of events" at Athene that must occur before Plaintiffs would suffer loss. ECF 41 at 15. The PSAC now alleges that Athene will likely be subject to regulatory action such as conservation or rehabilitation that will require Athene to take actions that would necessarily *interrupt* Plaintiffs' benefits even if Athene does not suffer immediate, catastrophic losses. PSAC ¶¶ 9, 110–11. In that likely scenario, Athene would be unable to mitigate Plaintiffs' losses or secure alternative funding, much less to do so rapidly enough to prevent any interruption of Plaintiffs' monthly payments. *Id.* ¶ 111. All in all, these additional factual allegations easily satisfy Plaintiffs' "light burden" to show a substantial probability of harm due to Athene's failure. *Attias*, 865 F.3d at 627.

A recent decision denying a motion to dismiss similar claims regarding an Athene

---

relatively meager sum in absolute terms").

annuitization further supports Plaintiffs' standing based on a substantial risk of future injury. *Konya v. Lockheed Martin Corp.*, No. 24-750-BAH, 2025 U.S. Dist. LEXIS 59630, at *24–28 (D. Md. Mar. 28, 2025) (concluding that plaintiffs had adequately alleged that "there is 'a substantially increased risk' that Athene will fail and Plaintiffs will suffer harm because of it"). The court found that the plaintiffs alleged "much more than a bare allegation that Athene might hypothetically fail," with the collapse of Executive Life as an example of the "very real possibility" that Athene's high-risk practices pose an imminent risk. *Id.* at *24–25. Allegations that Athene has used various schemes and offshore tactics to avoid capital requirements, that Athene's surplus is exceedingly small, and that the private equity business model is incompatible with the interests of annuitants, further supported the conclusion that the plaintiffs faced imminent injury. *Id.* at *26–28. The court concluded that "at this early stage," the plaintiffs had alleged enough facts to show "a substantially increased risk" that Athene will fail. *Id.* at *28. That the standing dispute is intertwined with the ultimate merits issue of Athene's riskiness also weighed in favor of allowing the case to proceed. *Id*. at *36–39.

As discussed, the allegations in the proposed amendment are similar to those in *Konya*, and compel the conclusion that Plaintiffs have standing based on a substantial probability that Athene will fail. Accordingly, the proposed amendment is not futile.

**B. There is no other basis to deny leave to amend.**

No other ground that would justify denying leave to amend is present; there is no evidence of "undue delay, bad faith or dilatory motive," nor have Plaintiffs repeatedly failed to "to cure deficiencies by [previous] amendments." *Firestone*, 76 F.3d at 1208. Although Plaintiffs previously amended their pleading "once as a matter of course," Fed. R. Civ. P. 15(a)(1)(B), this would be the first amended pleading made with the guidance of a ruling from the Court as to the sufficiency of Plaintiffs' standing allegations. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo*

*Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

Nor can Defendants suggest that Plaintiffs unduly delayed or acted in bad faith or with dilatory motive. The burden is on the non-movant to make that showing. *Palacios v. MedStar Health, Inc.*, 298 F. Supp. 3d 87, 92 (D.D.C. 2018) ("Preventing a party from amending her complaint on the basis of bad faith generally requires an affirmative showing by the nonmoving party.") (quoting *Sherrod v. McHugh*, 249 F. Supp. 3d 85, 87 (D.D.C. 2017)).

Defendants also will not be prejudiced by the proposed amendment. "A motion to amend may be denied where a defendant would have to conduct additional discovery and a plaintiff has filed an untimely motion to amend without demonstrating a good reason for the delay." *Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 49 (D.D.C. 2009). The amendment should be allowed if it does not "radically alter the scope and nature of the case." *Id*. at 48 (quoting *Miss. Ass'n of Coops. v. Farmers Home Admin*., 139 F.R.D. 542, 544 (D.D.C. 1991)). Here, the proposed amendments do not alter the substantive claims or seek to add any new claims, merely adding factual details establishing the Court's jurisdiction. Thus, allowing the amendment will not make discovery any more burdensome than it otherwise would have been. This case has yet to proceed beyond the motion to dismiss stage. Discovery has yet to commence, and there are no impending deadlines that would need to be moved if the amendment is allowed.

## CONCLUSION

The Court should vacate the judgment and grant leave to file the proposed Second Amended Complaint.

April 25, 2025

Respectfully submitted,

/s/ *Jerome J. Schlichter*
SCHLICHTER BOGARD LLC
Jerome J. Schlichter*
Sean E. Soyars*
Kurt C. Struckhoff*
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
Phone: (314) 621-6115, Fax: (314) 621-5934
jschlichter@uselaws.com
ssoyars@uselaws.com
kstruckhoff@uselaws.com

*admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to counsel of record.

/s/ *Jerome J. Schlichter*
Jerome J. Schlichter